THE CITY OF SAN ANTONIO,
Petitioner,

v.

TPLP OFFICE PARK PROPERTIES, A
Texas Limited Partnership and
MSDW Southwest Partners, L.L.P.,
Respondents.

No. 04–1130.

Supreme Court of Texas.

Feb. 9, 2007.

Rehearing Denied April 27, 2007.

Andrew F. Martin, Office of the City Atty., Fred R. Jones, Goode Casseb Jones Riklin Choate & Watson, Martha Guadiana Sepeda, City of San Antonio Litigation Div., San Antonio, and Pamela Stanton Baron, Austin, for Petitioner.

Mark Alan Randolph, Hornberger Sheehan Fuller & Beiter, Charles M. Jefferson, Law Offices of Charles M. Jefferson, Mayo J. Galindo and James Scott Cheslock, Kreager Law Firm, San Antonio, for Respondents.

PER CURIAM.

In 1999, the City of San Antonio began taking action to block access from a private business driveway to a city street. The owner of the private driveway filed suit seeking a declaratory judgment and injunction preventing the City from blocking the driveway's access to the street. The trial court granted relief and the court of appeals affirmed. We conclude that the City's decision and actions to close access

between the private driveway and the street constituted a proper exercise of the City's police power, the City is not estopped from closing the access, and closing the access would not constitute a compensable taking. Without hearing oral argument, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

In 1971, the City of San Antonio approved an amendment to its zoning ordinance which allowed several acres of land to be developed into a commercial business development known as the Park Ten Business Park. Park Ten was within the San Antonio city limits, fronted the I–10 access road and abutted Freiling Drive, a residential street also located within the San Antonio city limits. The ordinance amendment provided that there was to be "no access to Freiling Drive from the Commercial Zones" and required a non-access easement between the residential and business zones. The issue of access to Freiling from Park Ten came before the City Council twice during the next two years, but both times the Council left the prohibition of access in place. In 1973, the Park Ten developer purchased a tract of commercially developed land that abutted both Park Ten and Freiling Drive but was partially within the city limits of Balcones Heights. The Balcones Heights tract of land had a driveway that provided access to Freiling. Park Ten's developer then extended the driveway into the Park Ten property and connected it to Park Ten Boulevard, an existing City of San Antonio street in the business park. In 1975, the San Antonio Planning and Zoning Commission approved a plat that showed the Balcones Heights property and depicted the driveway. The minutes from the Planning and Zoning Commission meeting stat-

ed that the Commission was aware that the egress that developed along Freiling Drive passed through the City of Balcones Heights and that "the Commission has no jurisdiction in that situation." In 1989, a replat depicting the driveway was approved by the Commission.

In the summer of 1999, the City of San Antonio began taking steps to address traffic using Freiling to enter and leave Park Ten via the driveway. The City's action was in response to complaints from area residents regarding increased traffic on Freiling. TPLP Office Park Properties, Ltd.,[1] a property owner in the business park, filed suit for injunctive relief and a declaratory judgment seeking to keep the access open. The City filed a counterclaim alleging that the driveway and traffic accessing Freiling from the driveway constituted a nuisance and that the driveway violated city ordinances. In November 1999, the City passed a traffic control ordinance restricting the types of turns that could be made out of the driveway onto Freiling and into the driveway from Freiling. The ordinance did not, to the satisfaction of residents on Freiling, correct the problems. The lawsuit continued.

During pendency of the suit, proponents and opponents of closing the access to Freiling made presentations at the June 28, 2001, City Council meeting. Following the presentations, the Council passed an ordinance that, among other things, directed the City Attorney to "take any and all necessary action to . . . close the street/access connection in question to vehicular traffic."

In November 2001, the trial court held a pretrial hearing for the stated purpose of determining two questions of law: (1)

1. MSDW, another business park property owner, intervened in the suit. TPLP and MSDW will collectively be referred to as TPLP.

whether the proposed action by the City in closing the street/access would be a valid exercise of the City's police power, and (2) whether closing the street/access would result in a material and substantial impairment of access or whether it would result merely in a circuity of travel. At that time, the City's pleadings referenced the 1971, 1972, 1999, and 2001 ordinances. The City pleadings included allegations that the ordinances and the City's actions were pursuant to its police power, were legislative decisions rationally related to matters properly within its police power, and were not arbitrary or unreasonable. The City also pled that it had the police power to close the connection between the driveway and Freiling to vehicular traffic, to prevent vehicular traffic from entering or leaving streets and the general power to regulate use of streets. In addition to other relief, the City sought a declaratory judgment regarding its rights and status as to the connection/access between the driveway and street, its police power to close the street/access and enforcement of zoning decisions and ordinances. The trial court took evidence at the hearing, then rendered judgment declaring that (1) the attempted closure of the Freiling Drive street/access would constitute an unreasonable exercise of the City's police power, (2) the City could exercise its police power over the design and/or configuration of the street/access to the extent reasonably necessary to alleviate a hazardous condition provided the exercise of police power did not result in closure or material impairment of the existing usage of the street/access involved in the lawsuit, (3) closure of the Freiling Drive street/access would result in a compensable taking of the property rights of TPLP, and (4) the City was estopped as a matter of law from closing the street/access. The trial court made findings of fact which included, among other matters, findings that the traffic entering and leaving Park Ten from Freiling Drive did not create a safety hazard to nearby residents, did not create a nuisance or safety concern for the City, and the City's attempted closure of the driveway access would not be in furtherance of the public interest nor would it promote the safety, comfort, health, convenience and/or general welfare of the public or the community. The trial court concluded that the City's actions in attempting to close the driveway were "not rationally related to any legitimate governmental/legislative goal of the City." Attorney's fees were awarded to TPLP. The City appealed.

The court of appeals first noted that TPLP was not challenging the validity of any of the City's ordinances, but was challenging the City's contention that the driveway violated the ordinances. It then reviewed the legal and factual sufficiency of the evidence supporting the trial court's findings of fact and conclusions of law. Concluding that there was sufficient evidence to support the trial court's findings, the court of appeals affirmed. 155 S.W.3d 365, 374.

The City urges, in part, that the court of appeals applied an improper standard of review. The essence of its argument on this issue is that the trial court erred in its evaluation of the City's plans to close access to Freiling as an exercise of its police power. According to the City, the trial court reweighed the City's actions by a preponderance of the evidence when it should have limited its review to determining whether there was evidence from which the City could have rationally determined that closure of the access would promote an objective within the City's police power. As part of its contentions the City urges that the effect of TPLP's position is a challenge to the validity of the 2001 ordinance, and that review of the ordinance's validity requires the same def-

erential standard of review: could the City have rationally believed at the time the ordinance was enacted that closure of the access would promote an objective within the City's police power. The City contends that the trial court's improper standard of evaluating the City's actions was endorsed by the court of appeals' review of the trial court's findings for legal and factual sufficiency of the evidence.

TPLP's position is that the court of appeals applied the correct standard of review because TPLP has not challenged the validity of the 2001 ordinance as the ordinance does not close access from the driveway. In the alternative TPLP urges that if the 2001 ordinance requires closure of access to Freiling then the ordinance is an unreasonable exercise of the City's police power. TPLP also argues that in any event, access from the driveway cannot be closed because it does not violate any city ordinance (including the 1971 and 1972 zoning ordinances and the 2001 ordinance), the City is estopped from closing the access, and such closure would constitute a compensable taking.

We first discuss the 2001 ordinance. Section 4 directed the city attorney to take any and all necessary action "to enforce the prior ordinances referenced above and to close the street/access connection in question to vehicular traffic, including, but not limited to . . . enjoin further violations of Ordinance No. 39266 and subsequent City Council actions and zoning decisions relative to the Park Ten Business Park and the prohibition of commercial traffic from having access to Freiling Drive." Section 5 directed and authorized the city staff to "take any and all necessary action to close the connection between Freiling drive and the street/access in question to vehicular traffic," dependent on judicial determination that the City is authorized to enforce the prior ordinances and that clo-

sure of the driveway will not result in a material and substantial impairment of access to owners and lessees in Park Ten Business Park.

Regardless of whether the driveway and its use by vehicular traffic to enter and leave Park Ten via Freiling violated prior ordinances, the 2001 ordinance directed the city attorney and staff to take action to prevent such vehicular traffic. Section 5 contained two contingencies: closure of the driveway depended on judicial determination that access of owners and lessees to Park Ten would not be materially and substantially impaired and judicial determination that the City is authorized to enforce the prior related ordinances. As to the first contingency, closing access to Freiling will not materially and substantially impair access to Park Ten for reasons we subsequently explain. As to the second contingency, TPLP does not contest the City's right to enforce the prior related ordinances—TPLP just says that it is not in violation of the ordinances.

In their arguments regarding what standard of review should be applied to the trial court's determination that the closure of access would constitute an unreasonable exercise of the City's police power, the parties disagree over the effect of the 2001 ordinance and whether TPLP is challenging the validity of that ordinance. However, we agree with the City that whether TPLP's suit is labeled a challenge to the ordinance, or to the City's past and future actions in attempting to close the access to Freiling as an exercise of its police power, the standard that should be used by courts to determine the claims is the same: deferential review.

 As the court of appeals noted, this case involves a substantive due process challenge. 155 S.W.3d at 372. The exercise of police power by a city must accord with substantive due process princi-

ples, that is, it cannot be arbitrary and unreasonable. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 938 (Tex.1998) (recognizing that a city's action violates substantive due process if it is arbitrary and unreasonable). The U.S. Supreme Court has instructed that a City's action with regard to property regulation will survive a substantive due process challenge if it could have rationally been decided that the measure might achieve the objective. *Nollan v. Cal. Coastal Comm'n,* 483 U.S. 825, 835 n. 3, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). The "rational basis" standard of review is not just applicable to challenges to the validity of an ordinance. We have applied the "rational basis" standard of review to a substantive due process challenge of a city's actions in denying a development application. *Mayhew,* 964 S.W.2d at 938–39. Therefore, the standard of review applicable to the City's ordinances and other actions in limiting, or seeking to limit, vehicular access to Freiling Drive via the driveway is whether the actions rationally could have been related to a proper exercise of its police power. Under the rational relationship standard, the City's decisions must be upheld if evidence in the record shows it to be at least fairly debatable that the decisions were rationally related to a legitimate governmental interest. *Id.* at 938.

■ The trial court resolves disputed fact issues, but the ultimate question of whether an action or ordinance regulating property violates due process is a question of law. *Id.* at 932. Therefore, whether the ordinances and actions designed to close access to Freiling are rationally related to a legitimate state interest is reviewed without deference to the trial court's conclusions of law. *See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996) (noting that questions of law are reviewed without deference to a lower court's conclusions).

■ The City argues that closure of access to Freiling is related to at least two governmental interests: safety and separating commercial traffic from a residential neighborhood to improve the residents' quality of life. These purposes both constitute legitimate state interests. *See Mayhew,* 964 S.W.2d at 934, 938. TPLP claims the evidence presented at the court hearing[2] conclusively proved the driveway does not create a safety hazard. However, even if TPLP is correct, evidence remained that closure of access to Freiling would separate commercial traffic from the residential area and such separation would improve the quality of life for some, if not all, the residents along Freiling. The City Transportation Engineer testified that his decision to close the access to Freiling was based on a quality of life issue, and that the volume of traffic was high for a residential street. Residents along Freiling testified how traffic from the driveway had a negative impact on the quality of their lives. For example, some residents would not allow children to play in their front yards due to traffic concerns, traffic caused one house to vibrate to the point that things fell off a shelf, headlights would shine in a bedroom window during late night hours, and residents would not walk outside near the driveway during certain times of day. Evidence was offered that almost 2,300 vehicles use the driveway daily, and that at one of the busiest times of the day, approximately 600 vehicles

2. The City also offered as evidence a transcript of the presentations and proceedings which took place at the June 28, 2001 Council meeting at which the City Council considered the access issue in connection with the 2001 ordinance. The trial court excluded the evidence. We do not reach or address whether the trial court erred in its ruling because the ruling does not affect our decision.

would use the Freiling exit of the driveway while only 80 vehicles would use Freiling without accessing the driveway. It is undisputed that closure of the driveway would reduce traffic on Freiling. Such reduction of traffic is rationally related to promoting the quality of life of area residents. Closing the driveway's access to Freiling rationally relates to an objective within the City's police power. Accordingly, such action does not violate TPLP's right to substantive due process and constitutes a proper exercise of the City's police powers.

■ TPLP argues, and the court of appeals held, that because the existence and use of the driveway does not violate any City ordinance, access to Freiling cannot be closed. However, the City's Charter and the Transportation Code give the City authority over city streets. Violation of an ordinance is not required for the City to exercise this authority. *See* TEX. TRANSP. CODE §§ 311.001, 311.007; City of San Antonio Charter Art. I § 3 para. 7. In any event, the trial court's declaratory judgment, which the court of appeals affirmed, was not limited to the 2001 and prior ordinances or any other specific action. Without limiting its order to past actions or actions the City would take pursuant to the 2001 ordinance or future ordinances, the court declared that closure of the access would constitute an unreasonable exercise of the City's police power and restricted the City from exercising its police power in the future to close or materially impair the existing usage of the street/access. The court of appeals erred in affirming that part of the order.

■ Next, we consider the City's claim that the court of appeals erred in holding that closure of the driveway's access to Freiling would constitute a compensable taking of TPLP's property rights.

The question of whether access rights have been materially and substantially impaired is a question of law. *State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996). If access to a landowner's property is materially and substantially impaired, the landowner is entitled to compensation. *Id.* at 10. However, diminished access is not compensable if suitable access remains. *Id.* at 11.

If the access to Freiling is closed, at least six points of egress and ingress along the I–10 access road will remain at the front of the business park. TPLP argues that the access along I–10 will not be reasonable because (1) around 80 percent of TPLP's tenants enter the business park via the driveway, (2) entering the business park from I–10 would require those individuals currently using the driveway entrance to travel an additional two miles, (3) the decreased access would result in lower lease rates, and (4) an increase in traffic exiting onto the I–10 access road and traveling through the business park to get to those exits will cause safety hazards and congestion.

■ We have held that access to a business was not materially and substantially impaired when one access point was closed, but another access point on a public street remained unaffected. *Archenhold Auto. Supply Co. v. City of Waco,* 396 S.W.2d 111, 114 (Tex.1965). We noted that the issue of whether reasonable access remains should not be fragmented to focus only on the closed access point without considering remaining access points. *Id.* at 114. Therefore, while the driveway may be used by up to 80 percent of TPLP's tenants to access the business park, we cannot consider only whether the entrance used by those individuals will be closed. We must also consider the existence of remaining entrances. Closing an access point and merely causing diversion of traffic or circuity of travel does not

result in a compensable taking. *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex.1988). A reduction in lease rates that results merely from traffic being required to travel a more circuitous route to access Park Ten is not compensable. *See id.* As for TPLP's contention that increased traffic exiting onto I–10 will create safety concerns and congestion, we have held that a new road configuration that was more hazardous and resulted in increased traffic that made turning more difficult was evidence of inconvenience, but did not constitute material and substantial impairment of access. *Heal*, 917 S.W.2d at 11. Consistent with our precedent, we hold that access to the business park will not be materially and substantially impaired by closure of access to Freiling.

Finally, the City argues that the trial court and court of appeals erred in holding that the City was estopped from closing the driveway's access to Freiling. We have said that in exceptional cases a city may be estopped from taking certain actions where circumstances demand application of the doctrine to prevent manifest injustice. *City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 774 (Tex.2006). But, even if doing justice would otherwise warrant applying principles of estoppel, courts will not apply the doctrine if doing so interferes with a city's ability to perform its governmental functions. *Id.* at 776.

TPLP argues that justice requires application of the doctrine of estoppel in this case because the City approved the driveway by approving the plat depicting it in 1975, and TPLP likely would have relied on the plat to confirm access to the property when it decided to purchase the property and spend over $1 million on improvements. Assuming, without deciding, that these facts depict a situation where doing justice might warrant application of estoppel principles, estopping a City from employing its chosen method to regulate traffic would improperly interfere with the City's performance of its governmental functions. *Id.*

In this case, the City initially attempted to regulate traffic by requiring all traffic using the driveway to enter from and exit to the west on Freiling and by restricting commercial traffic from the neighborhood by prohibiting all trucks. Evidence showed that those traffic control devices arguably did not achieve their goal, and the City elected to close the access to Freiling. Courts may not "second guess" a governmental entity's decision as to how it performs its governmental function of regulating traffic by imposing an estoppel theory under circumstances such as those presented by this record. *See id.*

The court of appeals erred in affirming the trial court's declaration that closure of vehicular access to Freiling via the driveway would not be a valid exercise of the City's police power, that it would constitute a compensable taking, and that the City is estopped from closing the driveway. The remaining issues presented do not affect our decision, thus we do not address them.

Pursuant to Texas Rule of Appellate Procedure 52.8(c), we grant the petition for review and without hearing oral argument we reverse the court of appeals' judgment. The case is remanded to the trial court for further proceedings consistent with this opinion.

Justice GREEN did not participate in the decision.