Opinion issued August 14, 2008


 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00981-CV






JAMES R. BURRIS AND WHEELCHAIR & SCOOTER EXPRESS, L.L.C.,
Appellants


V.


METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY,
TEXAS, Appellee






On Appeal from the County Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 822,749






O P I N I O N


 In this inverse condemnation suit, appellants, James R. Burris and Wheelchair
& Scooter Express, L.L.C., ("WSE") appeal the trial court's order that granted
summary judgment in favor of appellee, Metropolitan Transit Authority of Harris
County, Texas ("METRO"). In four issues on appeal, appellants argue that the trial
court erred in (1) granting METRO's motions for summary judgment on appellants'
claim that access to the property is materially and substantially impaired by a
METRO project; (2) granting METRO's motions for summary judgment on plaintiffs'
permanent taking claims associated with METRO's taking of appellants' ingress
easement appurtenant; (3) denying appellants' motion for partial summary judgment
claiming that there has been a compensable taking by METRO of the ingress
easement appurtenant and that access to their property has been materially and
substantially impaired; (4) granting METRO's motions for summary judgment on the
claims asserted by WSE because WSE is not an independent third party lessee, but
rather is Burris's wholly owned business which has an ownership interest that has
been damaged by METRO's actions; and (5) granting METRO's objections to
summary judgment evidence. 

 We affirm.

Background

 Burris owns a 17,000 square foot parcel of land at 4905 San Jacinto (the
"Property") at the corner of Wichita Street in Houston, Texas. (1) The Property is
improved with a 6,860 square foot commercial building where WSE sells wheelchairs
and motorized scooters to disabled persons. WSE and its sole owner, Burris, have
operated on the Property since 1993. (2) 

 In 2002, METRO began construction of a light rail line (METRORail) on San
Jacinto. Before construction of METRORail, WSE had two driveways where
customers could enter and exit the Property by vehicle from San Jacinto. (3) After
construction, METRO had to close one driveway into WSE from San Jacinto, and the
other driveway was converted into an exit-only drive. Now, the only entrance into
WSE is from the side street, Wichita. 

 Appellants filed suit against METRO for trespass and inverse condemnation
based on the allegations that METRO had damaged the Property by materially and
substantially impairing access to it and that METRO had permanently taken a portion
of the Property without payment of just compensation. 

 METRO filed a no-evidence and traditional motion for summary judgment on
all of appellants' causes of action. Appellants filed a response and a motion for the
determination of the issue of impairment of access. Appellants attached the affidavit
of Burris to their motion. Appellants also filed a cross-motion for summary
judgment. METRO filed objections to Burris's affidavit on the ground that it was not
based on personal knowledge. The trial court granted METRO's no-evidence and
traditional motions for summary judgment in part and denied appellants' motion for
partial summary judgment in part. The trial court sustained METRO's objections to
paragraphs 3 and 6 of Burris's affidavit. The trial court's order states that METRO
is granted summary judgment as to:

 a. Plaintiffs' claim that, following the completion of the
construction of the METRORail project, access to the
property located at the northeast corner of San Jacinto
Street and Wichita Avenue (the "Property") is materially
and substantially impaired.


 b. Plaintiffs' permanent taking claims associated with: (i) the
relocation of power lines across the southwest corner of the
Property; (ii) the alleged encroachment of the access drive
from the Property onto San Jacinto Street; and (iii) the
alleged encroachment of the grass strip between the
parking lot on the property and the sidewalk in the San
Jacinto Street right-of-way;


 . . . 


 d. The taking claims asserted by Plaintiff Wheelchair &
Scooter Express, L.L.C.


 The trial court granted in part appellants' motion for partial summary judgment
but otherwise denied their motion. (4) Appellants appeal from the final judgment
against them. 

Discussion


Standard of Review

 We review a trial court's summary judgment de novo. Valence Operating Co.
v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005); Provident Life Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant, and indulge every reasonable
inference and resolve any doubts in the nonmovant's favor. Dorsett, 164 S.W.3d at
661; Knott, 128 S.W.3d at 215; Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911
(Tex. 1997). Under Texas Rule of Civil Procedure 166a(c), the party moving for
summary judgment bears the burden of showing that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c);
Knott, 128 S.W.3d at 215-16. When both parties move for summary judgment and
the trial court grants one motion and denies the other, the reviewing court considers
the summary judgment evidence presented by both sides, determines all questions
presented, and if it determines that the trial court erred, renders the judgment the trial
court should have rendered. See Dorsett, 164 S.W.3d at 661; FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Inverse Condemnation

 In their first three issues, appellants argue that the trial court erred in granting
summary judgment on (1) appellants' claim that the Property was materially and
substantially impaired, (2) appellants' permanent taking claims associated with
Metro's taking of appellants' ingress easement appurtenant from San Jacinto into the
Property, and (3) the claim contending that METRO made a compensable taking of
the ingress easement appurtenant to appellants' Property from San Jacinto Street
because the rulings are contrary to the summary judgment evidence.

 A governmental unit exercises its power of eminent domain through the
process referred to as condemnation. See City of Houston v. Boyle, 148 S.W.3d 171,
178 (Tex. App.--Houston [1st Dist.] 2004, no pet.). Condemnation is the procedure
by which the sovereign exercises its right to take property of a private owner for
public use, without consent, upon the payment of just compensation. Id.; A.C.
Aukerman Co. v. State, 902 S.W.2d 576, 578 (Tex. App.--Houston [1st Dist.] 1995,
writ denied). "Inverse condemnation occurs when (1) a property owner seeks (2)
compensation for (3) property taken for public use (4) without process or a proper
condemnation proceeding." Boyle, 148 S.W.3d at 178; A.C. Aukerman Co., 902
S.W.2d at 577.

 A landowner whose property has been taken, damaged, destroyed for, or
applied to public use without adequate compensation may bring an inverse
condemnation claim pursuant to article I, section 17 of the Texas Constitution. Boyle,
148 S.W.3d at 177. The constitution provides in part, "No person's property shall be
taken, damaged or destroyed for or applied to public use without adequate
compensation being made, unless by the consent of such person. . . ." Tex. Const.
art. I, § 17; Boyle, 148 S.W.3d at 177; see also Tex. Parks & Wildlife Dep't v.
Callaway, 971 S.W.2d 145, 148 (Tex. App.--Austin 1998, no pet.) ("An 'inverse
condemnation' proceeding is the avenue of relief available when property has been
taken or damaged for public use without compensation or a proper condemnation
proceeding, and the property owner wishes to recover compensation for his loss."). 
The Texas Constitution therefore waives governmental immunity from suit and
liability "for the taking, damaging or destruction of property for public use." Steele
v. City of Houston, 603 S.W.2d 786, 791 (Tex. 1980); Boyle, 148 S.W.3d at 177. "To
demonstrate that a constitutional inverse condemnation has occurred, the landowner
must show that (1) the State intentionally performed certain acts in the exercise of its
lawful authority (2) that resulted in a 'taking' of property (3) for public use." Boyle,
148 S.W.3d at 177; see also Steele, 603 S.W.2d at 791-92; City of Houston v.
Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 308 (Tex. App.--Houston [1st
Dist.] 2001, pet. denied).

 To be compensated for impairment of access, a landowner must prove he
suffered a material and substantial impairment of access to his land. State v. Heal,
917 S.W.2d 6, 10 (Tex. 1996); see also City of Waco v. Texland, 446 S.W.2d 1, 2
(Tex. 1969). In order to show material and substantial impairment, the property
owner must establish (1) a total temporary restriction of access, (2) a partial
permanent restriction of access, or (3) a partial temporary restriction of access due to
illegal or negligent activity. State v. Schmidt, 867 S.W.2d 769, 775 (Tex. 1993); City
of Austin v. Avenue Corp., 704 S.W.2d 11, 13 (Tex. 1986). The "material and
substantial test" acknowledges situations in which the access for which the property
was specifically intended is rendered unreasonably deficient even though normal
access remains reasonably available. Heal, 917 S.W.2d at 10.

 It is a question of law whether there is a "material and substantial impairment"
to the remainder as a direct result of a taking. Schmidt, 867 S.W.2d at 777; Precast
Structures, Inc. v. City of Houston, 942 S.W.2d 632, 636 (Tex. App.--Houston [14th
Dist.] 1996, no writ). We review questions of law de novo and without deference to
the lower court's conclusion. Heal, 917 S.W.2d at 9; Precast Structures, 942 S.W.2d
at 636. Before trial, the court must determine whether access rights have been
materially and substantially impaired and control the admission of trial evidence
accordingly. Heal, 917 S.W.2d at 9.

 Before METRORail, appellants had two driveways from San Jacinto for
ingress and egress into the Property. After construction, appellants have one
driveway that provides egress from the Property onto San Jacinto and another
driveway that provides both ingress and egress from Wichita, immediately around the
corner from the former entrance on San Jacinto. On appeal, appellants argue that this
new configuration materially and substantially impairs the access to their property.

 Appellants rely on evidence that (1) their Property fronts on San Jacinto Street
and has as its address 4905 San Jacinto Street, at which appellants' business has
operated continuously since 1993; (2) prior to the construction of the METRO
railroad, Plaintiffs had fifty-five feet of driveway providing ingress and egress on San
Jacinto, a major four-lane thoroughfare that is traveled by at least 10,000 vehicles per
day; (3) there is now no ingress to the Property from San Jacinto as it is completely
blocked by the railroad; (4) there is now only a twenty-foot-wide driveway that can
be used only for egress from the Property onto San Jacinto during periods when a
METRO train is not approaching; (5) the only ingress to the Property for customers
is from a thirty foot driveway that fronts on Wichita Street, a minor two-lane cross
street that has 97.5% less traffic on it than San Jacinto; (6) it is now illegal to turn
right (east) off of San Jacinto onto Wichita when a train is approaching from the
south to the north; and (7) it is also impossible to turn right (east) off of San Jacinto
onto Wichita and then to the left onto Plaintiffs' Property if even one vehicle has
stopped at the light facing west at the intersection of San Jacinto and Wichita, as it
blocks the driveway. Appellants also argue that their Property is the only retail
business that fronts on and has an address on San Jacinto that has had its frontage
ingress totally blocked by the rail line. 

 METRO argues that there has not been a material and substantial impairment
of access and points to other evidence in the record. Michelle Solomon, an
investigator hired by METRO, submitted an affidavit in which she testified from her
visits to the Property that (a) vehicles can easily access and visit the Property from
Wichita Street; (b) there is ample room in the Property's front parking lot to allow
visitors to enter, park in, and exit the parking lot; and (c) most vehicles exiting the
Property exit onto Wichita Street. 

 Although appellants argue that when a car has stopped on Wichita at the corner
of Wichita and San Jacinto at the stoplight, cars turning from San Jacinto onto
Wichita cannot enter the Property, we observe that in other places in the record
appellants have emphasized that very few cars travel on Wichita. This fact lessens
appellants' complaint regarding a material and substantial impairment of access by
the moving of the entrance to Wichita. The record also indicates that side streets
around the Property allow customers to enter the property by traveling west on
Wichita and turning right into the Property's parking lot. Moreover, the frontage and
signage of appellants' business remain unchanged, so that there is no impairment of
the ability of persons traveling on San Jacinto to locate the business and its entryway
immediately around the corner on Wichita. Finally, although the Property lost one
driveway that provided ingress and egress onto San Jacinto, the Property still retains
another driveway with egress onto San Jacinto and a driveway with both ingress and
egress onto Wichita. We address, therefore, whether, given these facts, appellants'
Property has been materially and substantially impaired.

 Because both parties rely primarily on the same cases we analyze them in turn. 
Appellants rely on DuPuy, (5) Texland, (6) and Marks (7) to show that METRO materially
and substantially impaired their ingress to the Property. Appellants contend, "The
fact that some access to the Property remained from the side street, Wichita, is
immaterial under [Texas caselaw]." Appellants further contend, "The salient fact in
DuPuy, Texland, and Marks where the Court found impairment of access is that in
each case the property owners preexisting frontage on the streets in question was
interfered with but ingress was not totally denied. In Archenhold and Delaney, where
there was found to be no impaired access, the property owner's frontage was not
altered by the construction." Appellants argue that the taking here is more egregious
than in those cases because appellants have "no ingress whatsoever from their
frontage on San Jacinto." 

 In DuPuy, prior to construction of a viaduct, DuPuy's property fronted and had
full access to South 17th Street and sided with an alley connected to Franklin Avenue. 
396 S.W.2d 103, 104 (Tex. 1965). After the City of Waco constructed the viaduct,
South 17th Street became fourteen feet above DuPuy's property and a concrete
support was placed beneath the viaduct. The end result of the construction was that
DuPuy's property was in a cul-de-sac. Id. at 110. The supreme court stated, 

The determination in a given situation of whether or not there has
occurred a compensable damaging under the Constitution is to be
approached from the premise that an access right is an easement
judicially recognized as appurtenant to tangible property to protect the
benefits of private ownership. This should not be extended to recognize
a compensable damaging where a property owner has reasonable
access to his property after construction of the public improvement. The
benefits of private ownership have been assured so long as there is
reasonable access and an action for compensation under the
Constitution will not lie where such is the case. 


Id. at 109 (emphasis added). The supreme court concluded that the construction of
the viaduct had deprived DuPuy of reasonable access to his property. DuPuy, 396
S.W.2d at 110.

 In Texland, the access to Texland's loading docks was partially blocked by
piers supporting the City's viaduct at issue in DuPuy. 446 S.W.2d 1, 4 (Tex. 1969). 
It became difficult, but not impossible, for trucks to maneuver in the area in front of
the docks. Id. The supreme court modified the inverse taking rule as stated in
DuPuy, stating that "property has been damaged for a public use within the meaning
of the Constitution when access is materially and substantially impaired even though
there has not been a deprivation of all reasonable access[.]" Id. at 2. The supreme
court held there was a substantial and material impairment of access that was
compensable as a damaging of property for public use. Id. at 4.

 In Marks, the supreme court held that the facts established a diminishment of
value of the property as a result of a loss of access. Specifically, the court found, 

(1) The space in which to make the turn from 'Old' Orleans Street onto
Gilbert Street is so narrow that large trucks, presumably of clients,
cannot negotiate the turn; (2) the remaining ten (10) foot lane (Gilbert
Street) is so narrow that (a) a vehicle could not travel down the street if
another vehicle chose to park there, and (b) a vehicle could not safely
travel down the street if a train were on the south track; and (3) since
'Old' Orleans remains one way north, the driver of a vehicle, too large
to make an exit on Gilbert Street, would not be able to turn such vehicle
and legally exist south on 'Old' Orleans.


City of Beaumont v. Marks, 443 S.W.2d 253, 256 (Tex. 1969).

 We disagree with appellants that the foregoing cases control the outcome here. 
Each case is factually distinguishable. In DuPuy, the plaintiff's property ended up
in a cul-de-sac with complete access to the frontage road blocked, along with
decreased access as a result of a concrete support placed underneath the viaduct. 
Here, appellant's property is not in a cul-de-sac and no permanent obstructions
preclude access to the Property. Likewise, in Texland, the impairment of access was
much more severe than here. Specifically, large piers that supported the viaduct
blocked access to plaintiff's property. Although not impossible for trucks to navigate
through the piers, it was much more difficult. Here, appellants do not argue on appeal
that METRO impaired its access to the Property by way of an obstruction such as that
used in Texland. Finally, in Marks, the Court had specific evidence showing that
construction of a railroad grade separation project made it so that large trucks,
presumably clients, could not access the plaintiff's property. Here, appellants
presented no evidence showing that their clients could not access the Property. 

 We agree with appellants that the Property has been impaired, but impairment
alone is insufficient for a compensable taking. Rather, appellants must show that the
impairment of access is material and substantial. See Texland, 446 S.W.2d at 2. The
Texas Supreme Court has made it clear that we do not focus only on the issue of the
closed access point without considering remaining access points. City of San Antonio
v. TPLP Office Park Props., 218 S.W.3d 60, 66-67 (Tex. 2007); Archenhold Auto.
Supply Co. v. City of Waco, 396 S.W.2d 111, 114 (Tex. 1965). Thus, although the
rules stated from the foregoing supreme court cases remain valid, we review other
cases that are more factually analogous. 

 On the same date that DuPuy was decided, the supreme court also issued
Archenhold Automobile Supply Company v. City of Waco, which concerned a
property across the street from DuPuy. 396 S.W.2d 111 (Tex. 1965). In Archenhold,
the court found that construction of the viaduct did not deprive Archenhold of
reasonable access. The court reached this conclusion because Archenhold, unlike
DuPuy, fronted Franklin Avenue, whereas DuPuy fronted on and had access to South
17th Street only. Id. at 112. The court adopted the rule from the court of New York
that "one or two public streets may be closed without compensation to an abutting
landowner if the remaining street furnishes suitable means of access." Id. at 114
(citing Egerer v. New York Central & Hudson River R.R. Co., 130 N.Y. 108, 29 N.E.
95 (1891)). 

 More recently, the Texas Supreme Court considered a material and substantial
taking in City of San Antonio v. TPLP Office Park Properties. See 218 S.W.3d 60
(Tex. 2007). In TPLP, a business park fronted the frontage road of I-10 and abutted
Freiling Drive, a residential street. The business park had entrances along I-10 in
addition to a driveway off of Freiling. The court noted that if Freiling were closed,
the business park would still have at least six points of egress and ingress along the
I-10 access road in front of the business park. The court held that access to the
business park would not be materially and substantially impaired by closure of access
to Freiling because another way to access the property remained. The court, relying
on Archenhold and State v. Wood Oil Distrib., Inc., noted that "[c]losing an access
point and merely causing diversion of traffic or circuity of travel does not result in a
compensable taking." Id. at 66-67 (citing Wood Oil, 751 S.W.2d 863, 865 (Tex.
1988)).

 In Interstate Northborough Partnership v. State, the State widened a frontage
road in front of an office building, resulting in one of the five driveways that led to
the building being closed for safety reasons. 66 S.W.3d 213, 217, 224 (Tex. 2001). 
In addressing damages for unsafe access and the cost to cure, the court held, as a
matter of law, that the trial court erred by finding a material and substantial
impairment of access to the plaintiff's remainder property when "[a]fter the
condemnation, reasonable access to [plaintiff's] property remained even though one
of the five driveways to the property was closed for safety reasons." Id. at 224 (citing
Heal, 917 S.W.2d at 10). 

 Finally, in Heal, the State of Texas condemned 436 square feet of the plaintiff's
residential lot in order to widen Southwestern Boulevard where that street approached
its intersection with North Central Expressway in Dallas. 917 S.W.2d at 7. The State
also erected a barrier wall adjacent to the residential area along the southbound
service lane of the Expressway between Southwestern Boulevard and Lovers Lane
to reduce noise affecting residents on the interior streets. The interior streets that
once fed onto the southbound service road were closed off. Thus, for residents to
access the Expressway, they had to use local cross streets. The plaintiff's expert
offered evidence that "the new configuration might create some confusion, be more
hazardous, and result in more difficulty in turning left into [their] driveway because
of increased traffic and the bottleneck that would form in front of their property." Id.
at 11. The Texas Supreme Court stated that although "this may be evidence of
inconvenience, it does not constitute material and substantial impairment." Id. The
Court also noted that in past impaired access cases there had been a physical
obstruction created by a public improvement whereas, in Heal, the plaintiffs had
alleged only that traffic would impair their access. Id. The Court distinguished
traffic from a physical obstruction, noting that traffic would fluctuate and that, even
if there is congestion, "access is not materially and substantially denied." (8) Id. 

 Because appellants still retain full access to the Property from San Jacinto via
Wichita, as well as egress onto San Jacinto, we conclude that closure of appellants'
entrance off of San Jacinto did not amount to a material and substantial impairment. 
See City of San Antonio, 218 S.W.3d at 66-67 ("Closing an access point and merely
causing diversion of traffic or circuity of travel does not result in a compensable
taking."); Heal, 917 S.W.2d at 11 (holding that plaintiff failed to show material and
substantial impairment). Accordingly, we conclude that appellants' claims are not
compensable. See City of San Antonio, 218 S.W.3d at 67; Wood Oil, 751 S.W.2d at
865; Jordan v. Landry's Seafood Restaurant, Inc., 89 S.W.3d 737, 743 (Tex.
App.--Houston [1st Dist.] 2002, pet. denied) (holding no taking when "overall plan
provides ample parking and easy access to the property, and the restricting of traffic
does not materially and substantially impair [plaintiff] from entering the property").

 Because we conclude, as a matter of law, that the impairment of access at issue
here does not rise to the level of material and substantial and therefore appellants'
claims are not compensable, we need not address appellants' fourth issue, which
contends that the trial court erred in granting METRO's motions for summary
judgment on the claims asserted by WSE because WSE is not an independent third
party lessee, but rather is Burris's wholly owned business which has an ownership
interest that has been damaged by METRO's actions. Nor do we need to address
appellants' fifth issue, which contends that the trial court erred in granting METRO's
objections to paragraph numbers 9 and 10 of Burris's affidavit on the ground that the
evidence is admissible and that its exclusion in all probability resulted in the trial
court's error in granting METRO's motions for summary judgment and in denying
Plaintiffs' motion for partial summary judgment.

 We overrule appellants' first, second, and third issues.







Conclusion

 We affirm the trial court's orders that granted summary judgment in part for
METRO.

 



 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

1. Burris purchased the Property in 2000. Before purchasing the Property, Burris leased
the Property. 
2. WSE pays rent to Burris on a month-to-month basis. 
3. WSE has a parking lot in the rear (east side) of the store, but that area is used
exclusively for delivery vehicles, trash pickup, and employee parking. The east side
does not have a customer entrance.
4. The trial court stated that "summary judgment is granted as to Mr. Burris's claim
regarding the encroachment of the pedestrian crossing signal pole near the southwest
corner of the Property, the Court finding that there was a compensable taking from
the date the pedestrian crossing signal pole was constructed through the date the pole
was relocated off of the Property. Plaintiffs' Motion is otherwise DENIED." 
METRO has not appealed the partial summary judgment in Burris's favor.
5. DuPuy v. City of Waco, 396 S.W.2d 103 (Tex. 1965).
6. City of Waco v. Texland Corp., 446 S.W.2d 1 (Tex. 1969).
7. City of Beaumont v. Marks, 443 S.W.2d 253 (Tex. 1969).
8. The Heal court stated that it need not hold that traffic could never materially and
substantially impair access such that a constitutional taking or damaging occurs.