**Opinion issued September 29, 2015**



In The

# Court of Appeals

For The

## First District of Texas

———————————

## NO. 01-13-00865-CV

———————————

## DARRELL CHURCH, Appellant

## V.

## CITY OF ALVIN, TEXAS, Appellee

---

**On Appeal from County Court at Law No. 2 & Probate Court**
**Brazoria County, Texas**
**Trial Court Case No. CI047129**

---

## MEMORANDUM OPINION ON REHEARING

This inverse condemnation suit arises out of a bridge replacement project in Brazoria County that affected a driveway entrance. In his suit against the City of Alvin, Church alleges that the new bridge, which more closely abuts his driveway entrance and provides less maneuverability for a turn, prevents him from entering

and exiting his property with his 40-foot gooseneck trailer when traveling in the lane nearest the driveway. He further alleges that the bridge construction impaired the drainage on his property and killed several trees on his land.

Church sought damages from the City for inverse condemnation and a violation of the Texas Water Code, among other causes of action. The trial court granted the City's plea to the jurisdiction based on governmental immunity. Church appeals that ruling with respect to the Water Code and inverse condemnation claims, contending that the evidence raises fact issues on the jurisdictional question. Because Church (1) cannot establish a waiver of governmental immunity for a violation of the Water Code and (2) failed to adduce facts that support either a compensable taking or a substantial impairment of his existing access to his property, we conclude that the trial court properly granted the City's plea.[1]

**Background**

In 2001, Church purchased a seven acre tract of land located along County Road (CR) 172. A bridge is part of CR 172 as it approaches Church's property and runs partly in front of it. Between the paved surface of CR 172 and Church's property is a government-maintained open bar ditch that runs alongside the paved

---

[1] Church has filed a motion for rehearing in connection with our opinion and judgment issued June 25, 2015. We grant the motion, withdraw that opinion and judgment and issue this opinion and judgment in their stead. Our disposition remains unchanged.

road. Driveway access to Church's property is via an entrance across that ditch. It consists of a box culvert drain placed within the ditch, with a driveway apron built on top of it in the right-of-way.

*The bridge construction project*

The Federal Department of Transportation provides funding to the states to replace obsolete bridges. *See* 23 C.F.R. §§ 650.405, 650.413; 43 TEX. ADMIN. CODE § 16.153(a)(1)(B), (a)(6). In Texas, the Texas Department of Transportation (TxDOT) administers the expenditure of these federal funds through its Highway Bridge Program. In 2005, TxDOT identified ten obsolete bridges in and around Brazoria County for replacement, including the bridge on CR 172 that abuts Church's property within the City of Alvin. The City of Alvin City Council authorized the City to contract with TxDOT to replace the CR 172 bridge and five other bridges and approved TxDOT's recommendation that the City take responsibility for replacing the four remaining bridges.

Under the City/TxDOT agreement, the City was responsible for acquiring all necessary rights of way for the TxDOT bridge projects. TxDOT bore the responsibility to perform the bridge replacements. The agreement provides that TxDOT would administer the contracts for construction, including the bridge design. The agreement expresses that TxDOT is not the City's agent for purposes of the project:

The parties to this Agreement agree that no party is an agent, servant, or employee of the other party and each party agrees it is responsible for its individual acts and deeds as well as the acts and deeds of its contractors, employees, representatives, and agents.

Pursuant to the agreement, TxDOT hired Klotz Associates, Inc. to design the new CR 172 bridge and Tom-Mac, Inc. to build it.

James Nance, the City's project manager, monitored the project's status and served as the City liaison to the project. In an affidavit proffered by the City in support of its plea to the jurisdiction, Nance averred that,

[a]s the City's Project Representative, I did not have any control over any aspect of the Project, did not direct the engineers on how to design the project, and did not direct the construction contractor on how to build it. In addition, I reviewed the records of the City regarding the Project. As a TxDOT project, the City did not provide any employees to perform work on the Project for the general contractor [Tom-Mac, Inc.] or for the engineering firm [Klotz Associates, Inc.].

*The driveway dispute*

Work began in January 2010. Church informed the City's public works director, David Kocurek, that he was concerned that the bridge expansion was going to interfere with his existing driveway entrance. Church told Kocurek that he uses a 40-foot horse trailer for business and recreation and that he housed the trailer on his property. Church testified that, as a result of these discussions, Kocurek agreed that the City would construct a new 40-foot asphalt driveway on Church's private property and install new fencing across the area where the

4

original driveway had been located. Kocurek and Church prepared and initialed a drawing of Church's property containing handwritten notes that described the fencing and the relocation of Church's driveway. However, Thomas Peebles, the City's Clerk, proffered an affidavit in which he averred that the City Council never authorized this agreement. The hand-drawn map was not a part of the Council's resolution approving the bridge construction or any subsequent resolution.

The proposed driveway relocation also did not appear in the TxDOT engineering firm's plans for the new bridge. Instead, the new bridge was planned so that it would stop short of Church's existing driveway entrance. TxDOT and its contractors replaced the bridge pursuant to the plans. The contractors built a new, narrower entrance across the bar ditch in the public right-of-way that connected to Church's existing driveway, but they did not move the driveway entrance or construct a new driveway on Church's land. As Nance describes it:

> The bridge on CR 172 is northeast of Church's driveway and is a few feet longer than the old bridge it replaced. As part of the Project, the apron to the bridge was reconstructed . . . . {W]hile TxDOT's contractors were working on the Project, Church complained that the guardrail constructed on the southeast side of the bridge, as a part of the bridge approach, was nearer to his existing driveway than the prior bridge. He further complained that the location of the guardrail made it impossible for him to turn into his driveway while traveling south on CR 172 and towing his horse trailer, or to turn north from his driveway while towing his horse trailer.

5

Stephanie Bradford, the Property and Acquisition Coordinator for the Engineering Department of Brazoria County, averred that entire right-of-way where the new CR 172 bridge was constructed was a part of the County Road System and within a right-of-way easement in favor of Brazoria County, and then the City of Alvin, since at least 1967.

In his deposition, Church elaborated on the damages he alleged. Church testified that the new CR 172 bridge extends approximately 20 feet beyond where the previous bridge ended, which narrowed the available turning radius when entering or exiting his property in the near lane. He explained, "[I] can barely turn my truck off of that driveway and stay on the driveway now, where I had a 45-foot apron [crossing the roadway bar ditch] the way it was before." He noted that the construction crew rebuilt Church's driveway access to CR 172, but with only a 12-foot-wide driveway entrance across the bar ditch in the public right-of-way instead of the 24-foot-wide paved entrance he previously had.

In addition, Church testified that the construction workers had replaced a large box culvert in the open bar ditch with a smaller, lower-placed, culvert. Church explained that the change has subjected portions of his property to increased flooding and slower drainage, resulting in erosion. He also claims that the construction workers, using motor-driven equipment, cut tree roots while digging near his property line, which caused several trees on his property to die.

6

*The trial court proceedings*

In his third amended petition, filed in response to the City's jurisdictional plea, Church alleged that the City waived immunity because "motor driven vehicles were used by [the City's] employees to destroy [Church's] trees, culvert, and to expand a roadway bridge." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(a) (West 2011) (waiving immunity for claims against governmental unit based on operation or use of motor-driven vehicle or motor-driven equipment). Further, Church alleged that the City's "failure to replace [his] culvert with an equal or better culvert than [the] original culvert has diverted water and caused it to overflow on [his] land in violation of Texas Water Code Sec. 11.086."

The City challenged Church's third amended petition in a reply filed after the hearing on the plea. The trial court, "after reviewing the pleadings and evidence on file," granted the plea and dismissed Church's suit.

**Plea to the Jurisdiction**

I.     **Standard of Review**

If a governmental unit has immunity from a claim pending against it, a trial court lacks subject-matter jurisdiction as to that claim. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). The governmental unit may challenge the trial court's subject-matter jurisdiction by asserting a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). In a

7

plea to the jurisdiction, a party may challenge the pleadings, the existence of jurisdictional facts, or both. *Id.* at 226–27. We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228.

When a plea to the jurisdiction challenges the pleadings, we determine if the plaintiff has alleged facts affirmatively demonstrating the court's jurisdiction. *Id.* at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Id.* The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. *Id.* at 226–27. If they do neither, it is an issue of pleading sufficiency and the court should give the plaintiff an opportunity to amend the pleadings. *Id.* If, however, the pleadings affirmatively negate the existence of jurisdiction, then the court may grant a plea to the jurisdiction without giving the plaintiff an opportunity to amend. *Id.* at 227.

When the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we consider that evidence when necessary to resolve the jurisdictional issues raised. *Id.* The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. Under this standard, when reviewing a plea in which the pleading requirement has been met, we credit as true all evidence favoring the nonmovant

and draw all reasonable inferences and resolve any doubts in the nonmovant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id.* Proof is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Miranda*, 133 S.W.3d at 228.

## Discussion

Church contends that we should reverse the trial court's ruling because (1) the trial court failed to afford him an opportunity to amend his pleadings before dismissing his claims; (2) the Texas Tort Claims Act provides a jurisdictional basis for allowing his claim of a Water Code violation; and (3) he has adduced some evidence in support of his inverse condemnation and Texas Tort Claims Act claims. We address these contentions in turn.

## I.     Amended Pleadings

As a threshold matter, Church questions whether the trial court's ruling is based on Church's second amended petition—which was the live pleading when the City filed its plea—or on Church's third amended petition, which he filed in response to the plea four days before the trial court held a jurisdictional hearing.

We conclude that the trial court considered the third amended petition in connection with its ruling; thus, Church was afforded an opportunity to amend his pleadings before the trial court granted the jurisdictional plea.

The rules of civil procedure do not prescribe a deadline for filing amended pleadings before the hearing or submission of a plea to the jurisdiction. *See City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, pet. filed) (citing *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.), for proposition that hearing on plea to jurisdiction is not "trial" under Rule 63, and so amended pleading filed after hearing but before ruling was plaintiff's live pleading for purposes of plea). In this case, the trial court recited in its ruling that it had "review[ed] the pleadings of the parties." Thus, the third amended petition is the operative pleading for the purpose of our review of the trial court's ruling. *See id.* Accordingly, we reject Church's contention that he was deprived of an opportunity to amend his pleadings.

## II. Water Code Claim

Church concedes that the Water Code does not waive governmental immunity from suit,[2] but contends that, because section 101.021(b) of the Tort Claims Act does, any pleading deficiencies are curable, as demonstrated by his third amended petition. The City challenged both Church's pleadings and the existence of jurisdictional facts with respect to Church's claimed Water Code violation. Church's briefing to this court challenges whether he had an opportunity to amend his pleadings in light of the City's jurisdictional challenge. As we have noted, however, he had that opportunity. Church does not otherwise advance jurisdictional facts that support a claim under the Texas Water Code. Because he does not challenge the substantive merit of the trial court's granting of a plea to the jurisdiction on this claim, we hold that the trial court did not err in dismissing it.

## III. Inverse Condemnation and Texas Tort Claims Act Claims

Relying on his third amended petition, Church contends that he is entitled to damages for inverse condemnation because: (1) the new bridge has impaired Church's access to his property; (2) the project changed the configuration of the drainage in the bar ditch, which causes more frequent flooding on his property; and (3) motor-driven equipment used by the construction workers in the project

---

[2] *See City of Midlothian v. Black*, 271 S.W.3d 791, 797–98 (Tex. App.—Waco 2008, no pet.) (holding that section 11.086 of Water Code does not waive immunity from suit).

severed tree roots, which caused the death of several trees on his property. The City responds that Church (1) has not raised evidence of any compensable impairment of access, and (2) does not allege and cannot establish that a taking resulted from the City's intentional acts.

## A. Applicable law

The Texas Constitution's takings clause mandates that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. Article I, section 17 of the Texas Constitution thus expressly waives governmental immunity for suits based on the taking, damaging or destruction of property for public use. *El Dorado Land Co., L.P. v. City of McKinney*, 395 S.W.3d 798, 801 (Tex. 2013); *Steele v. City of Houston*, 603 S.W.2d 786, 791 (Tex. 1980); *GAR Assocs. III, L.P. v. State*, 224 S.W.3d 395, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Accordingly, a landowner may sue for inverse condemnation when the government takes or damages the owner's land for public use without providing compensation via a formal condemnation proceeding. *See City of Carrollton v. HEB Pkwy. S., Ltd.*, 317 S.W.3d 787, 792 (Tex. App.—Fort Worth 2010, no pet.) (citing *City of Houston v. Tex. Land & Cattle Co.*, 138 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2004, no pet.)). An inverse condemnation claim

12

requires the plaintiff to adduce facts that show a compensable taking of private property; if a plaintiff cannot establish facts to support an inverse condemnation claim, then the trial court lacks jurisdiction over the claim and should grant a jurisdictional plea. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013).

To show that taking, a property owner must prove that a government actor intentionally took or damaged the owner's property for a public use. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). But "[i]t is not enough that the act causing the harm be intentional—there must also be knowledge to a substantial certainty that the harm will occur." *Harris Cnty. Flood Control Dist. v. Kerr*, No. 13-0303, ___ S.W.3d ___, 2015 WL 3641517, at *2 (Tex. June 12, 2015) (citing *City of Dallas v. Jennings*, 142 S.W.3d 310, 313–14 (Tex. 2004)).

## B.    Analysis

### 1.    Impaired access

Church first contends that the City owes him compensation for impairing access to his driveway. He claims that he cannot enter or exit his property with his 40-foot horse trailer using the lane nearest his driveway because the driveway entrance in the public right-of-way from CR 172 no longer is wide enough to

accommodate the trailer when turning into or out of the near lane.[3]  Diminished value resulting from impaired access is compensable only when access is materially and substantially impaired.  *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008) (per curiam) (citing *City of Waco v. Texland Corp.*, 446 S.W.2d 1, 2 (Tex. 1969)); *Smith v. City of League City*, 338 S.W.3d 114, 124 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 174 (Tex. 2009) ("[D]iminished access to a landowner's remaining property is not compensable so long as reasonable access to the property remains.").  Whether access has been materially and substantially impaired is a threshold question of law we review de novo.  *Dawmar Partners*, 267 S.W.3d at 878; *State v. Heal*, 917 S.W.2d 6, 9 (Tex. 1996).  To make this showing, a landowner can proffer evidence of a (1) total temporary restriction of access; (2) partial permanent restriction of access; or (3) partial temporary restriction of access due to illegal or negligent activity.  *State v. Schmidt*, 867 S.W.2d 769, 775 (Tex. 1993); *Burris v. Metro. Transit Auth.*, 266 S.W.3d 16, 22 (Tex. App.— Houston [1st Dist.] 2008, no pet.) (no impaired access claim where light rail permanently closed one entrance to retail property but another remained).  In considering whether impaired access is material and substantial, courts take into

---

[3]  Church also testified that a portion of the guardrail for the new bridge crossed inside his fence line, but he did not proffer any evidence that it crossed the boundary of his property or was outside the public right-of-way; nor does he argue any encroachment on appeal.

14

account existing uses of the property that required particular access. *See Heal*, 917 S.W.2d at 10; *Wilbert Family Ltd. P'ship v. Dallas Area Rapid Transit*, 371 S.W.3d 506, 510 (Tex. App.—Dallas 2012, pet. dism'd). Courts further consider whether reasonable access remains. *Dawmar Partners*, 267 S.W.3d at 878–89 (explaining that where reasonable access to property remains, hypothetical or speculative uses for property do not provide basis for compensable damages in condemnation suit). A diversion of traffic, diminished exposure to traffic, or altered accessibility to a roadway does not constitute a material and substantial impairment of access. *See State v. Petropoulos*, 346 S.W.3d 525, 532 (Tex. 2011).

In his response to the City's plea to the jurisdiction, Church does not adduce proof of a material and substantial impairment of access. First, the City adduced evidence that TxDOT constructed the bridge wholly within the public right-of-way: the bridge apron does not enter Church's property, and the new bridge does not physically obstruct Church's existing driveway. *See Heal*, 917 S.W.2d at 11 (noting that "all of our prior impaired access cases involved physical obstructions created by the public improvement").

Second, Church conceded in his deposition that he retains access to his property and his existing driveway, but that driveway access across the bar ditch is 12 feet narrower when compared with the right-of-way access that existed before the bridge construction. Crediting Church's testimony that the entrance across the

15

bar ditch is narrower than it was does not raise a fact issue of a taking by impairment, because Church still has access to the road. Nance averred that Church "complained that the location of the guardrail made it impossible for him to turn into his driveway while traveling south on CR 172 and towing his horse trailer, or to turn north from his driveway while towing his horse trailer." In his deposition, however, Church testified that he "couldn't get that [big trailer] on the property no matter which direction [he] came from . . . without ripping out the archway and everything." Church's complaint is that the public roadway access frontage is narrower due to the bridge, thus decreasing his maneuverability with regard to the decorative archway on his property. This evidence does not show that the bridge itself, built entirely within the public roadway, has deprived him of reasonable access to his property. In addition, Church did not adduce evidence that the project has prevented him from accessing the roadway with his longer trailer along the remaining frontage of his property.

Because the bridge does not obstruct his driveway, Church's claimed impairment is different than the facts in *City of Waco v. Texland Corp.*, the takings case upon which he relies. As the Court in *Heal* explained, in *Texland*, the City of Waco built a viaduct with piers "almost directly" in front of Texland's loading docks and warehouse doors so that the "lack of maneuverability reached such a level that the warehouse was virtually unusable for its intended purpose because

16

trucks capable of transport could not access the premises." *Heal*, 446 S.W.2d at 10 (citing *Texland*, 446 S.W.2d at 4).

A compensable taking does not occur, however, when a property owner retains reasonable access to the public roadway after a construction project. *Burris*, 266 S.W.3d at 22 (no taking when light rail completely obstructed driveway when other access point remained). Given that the new bridge (1) does not physically obstruct Church's private drive and (2) does not preclude other access points to the roadway from his property, we hold that Church's testimony that the TxDOT-constructed entrance within the public right-of-way is narrower than before does not constitute evidence of a "virtually impassable obstruction" or a material and substantial impairment of access. *See Heal*, 917 S.W.2d at 11; *Dawmar Partners*, 267 S.W.3d at 779–80 (rejecting takings claim where no evidence showed that access to available roads was impossible or impracticable). Accordingly, we hold that the trial court properly granted the City's plea to the jurisdiction against Church's claim for impaired access. *See TPLP Office Park*, 218 S.W.3d at 66; *Burris*, 266 S.W.3d at 24; *see also DuPuy v. City of Waco*, 396 S.W.2d 103, 109 (Tex. 1965) (explaining landowner entitled to compensation if public improvement destroys "all reasonable access" to property, however, no compensable taking exists where landowner has reasonable access to property after construction of public improvement); *State v. Momin Props., Inc.*, 409 S.W.3d 1, 9

17

(Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding closure of access road at railroad tracks not compensable because closure merely required traffic to travel more circuitous route to reach gas station or cross railroad tracks);.

## 2. Damage to drainage and trees

Church further contends that the trial court erred in dismissing his inverse condemnation claims that the City's replacement of a culvert and reconfiguration of the drainage in connection with the bridge project caused increased flooding on his property and killed several trees. He observes that the City's agreement with TxDOT (1) holds the City responsible for acquiring and providing right-of-way for the project, (2) allows the City to review and comment on the work as required "to accomplish the public purposes of Local Government," and (3) provides that the City may request changes at its own expense, "so long as it does not 'unduly delay' the development of the project." He further notes that Kocurek, on behalf of the City, negotiated with Church to address Church's concerns about his driveway.

These facts, however, are insufficient to show an intentional taking by the City. Mere negligence is not enough to establish a compensable taking: "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004).

In this case, Church did not adduce evidence of any communication concerning his property between TxDOT, which had assumed sole responsibility for the design and construction of the CR 172 bridge, and the City. Nothing in the record shows that the City knew that the reconfiguration of the drainage by TxDOT's contractor was substantially certain to result in flooding or that the construction activities undertaken at TxDOT's behest would kill Church's trees. The evidence also fails to raise a fact issue on whether the City knew that, by agreeing to have TxDOT perform the bridge project, the alleged damages to Church's property were substantially certain to result. Absent such evidence, a landowner cannot prevail on a claim for inverse condemnation. *Compare City of Keller v. Wilson*, 168 S.W.3d 802, 829 (Tex. 2005) (holding that, absent "objective indicia that the City knew flooding would occur," there was no evidence that City's approval of revised drainage plan was intentional taking) *with Kerr*, (concluding that homeowners raised fact issue concerning whether government entities knew that their actions caused flooding where some evidence existed that (1) entities received engineering advice explaining that additional development would cause damaging flooding, and (2) entities knew that development would lead to damaging flooding).

### 3. Motor-driven equipment

Finally, Church alleges that the construction workers' use of a motor driven vehicle caused the flooding and tree damage, and thus he may sue the City under the Texas Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1)(A). In the trial court, Church alleged that the City "[s]ubcontracted jointly with [TxDOT] and jointly hired the subcontractors to build the bridge." However, Nance averred that no City employee had participated in the design or construction work for the project, and Church admitted in his testimony that he had never seen a City employee working at the construction site. The agreement between the City and TxDOT charged TxDOT with the actual design and construction of the bridge, and disavowed any intent that its employees and subcontractors would be agents of the City. Because the summary-judgment record contains no evidence that a City employee operated motor-driven equipment in connection with the bridge project, we hold that the trial court properly granted the City's jurisdictional plea on Church's claim under the Texas Tort Claims Act.

### Conclusion

We hold that the trial court properly granted the City's plea to the jurisdiction and dismissed for lack of subject-matter jurisdiction Church's cause of

action for inverse condemnation and claims under the Texas Water Code and the Texas Tort Claims Act.  We therefore affirm the dismissal order.


                                    Jane Bland
                                    Justice

Panel consists of Justices Higley and Bland.[4]

---

[4]    Justice Sharp was a member of the original panel, but his term of office expired after oral argument and before issuance of this opinion.  *See* TEX. R. APP. P. 41.1.