

# NUMBER 13-20-00536-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**CITY OF SOUTH PADRE ISLAND,**                                    **Appellant,**

**v.**

**SURFVIVE, ANUBIS AVALOS,**
**AND ADONAI RAMSES AVALOS,**                                    **Appellees.**

---

### On appeal from the 138th District Court
### of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Longoria

Appellant the City of South Padre Island (SPI) challenges the trial court's denial of

its plea to the jurisdiction. In six issues, SPI alleges the trial court erred in denying its plea

because: (1) governmental immunity bars the recovery of nominal damages for a violation

of Texas Constitution Article I, § 19; (2) appellees Surfvive, Anubis Avalos, and Adonai

Ramses Avalos lacked standing to challenge SPI's ordinance; (3) appellees failed to establish a waiver of immunity from suit; and (4–6) appellees did not establish that the challenged sections of SPI's ordinance violated substantive due course of law as applied to appellees. We reverse and render.

## I. BACKGROUND

In February 2019, appellees filed their original petition, application for injunctive relief, and request for disclosure against SPI, arguing that SPI's city ordinance relating to the operation of mobile food units (MFUs) violated appellees' "economic liberty rights under Article I, § 19 of the Texas Constitution, to operate their mobile-food-unit businesses, colloquially known as 'food trucks.'" Section 10-31 of SPI's Code of Ordinances relates to MFUs, which are defined as: "[a] vehicle mounted, self or otherwise propelled, self-contained food service operation, designed to be readily movable (including, but not limited to catering trucks and trailers) and used to store, prepare, display, serve or sell food. Mobile units must completely retain their mobility at all times." SOUTH PADRE ISLAND, TEX., CODE OF ORDINANCES, ch. 10 § 10-31(A)(2) (2020). Section 10-31 requires MFUs to comply with all applicable laws including SPI's own ordinances.

Appellees specifically complained about § 10-31(C)(3), which appellees refer to as the "Restaurant Permission Requirement," and §§ 10-31(C)(2) and 10-31(F)(2), which appellees refer to as the "Permit Cap." Section 10-31(C)(3) requires that an "[a]pplicant must be supported locally and have the signature of an owner or designee of a licensed, free-standing food unit on South Padre Island before being eligible for a permit. Limit one local owner's (or designee's) signature per applicant." *Id.* § 10-31(C)(3). Section 10-

31(C)(2) limits the number of permits to be issued per month to twelve. *Id.* § 10-31(C)(2). Section 10-31(F)(2) states that "[t]he permit holder of a[n] [MFU] must apply to the Environmental Health Services Department prior to selling anything" and establishes that permits are valid for thirty days. *Id.* § 10-31(F)(2). Appellees' petition alleged that the complained-of sections in SPI's MFU ordinance prevented appellees from operating their food trucks in SPI. They further argued that SPI could not advance any legitimate government interest for the restaurant permission requirement or the permit cap.

SPI filed a plea to the jurisdiction and a motion for summary judgment, which the trial court took under submission. Subsequently, SPI filed a second plea to the jurisdiction and a no evidence and traditional motion for summary judgment. Appellees filed a response and their own motion for summary judgment seeking declaratory relief, a permanent injunction, and nominal damages. The trial court denied SPI's second plea to the jurisdiction and motion for summary judgment and granted appellees' motion for summary judgment. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (allowing an appeal from a denial of a plea to the jurisdiction by a governmental unit).

## II.    PLEA TO THE JURISDICTION

A plea to the jurisdiction is a dilatory plea; its purpose is "to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review de novo a trial court's ruling on a challenge to

3

its subject matter jurisdiction. *Id.* at 228. When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015); *Miranda*, 133 S.W.3d at 226. When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even where those facts may implicate the merits of the cause of action. *Miranda*, 133 S.W.3d at 227. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Ryder*, 453 S.W.3d at 927. Where the pleadings generate a fact question regarding the jurisdictional issue, a court cannot sustain the plea to the jurisdiction. *Id.*

## A.     Standing

We review questions of standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). This is because standing is a component of subject matter jurisdiction. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (citations omitted) ("Without standing, a court lacks subject matter jurisdiction to hear the case."). Standing is a threshold requirement to maintaining a lawsuit. *See Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012) (citations omitted) ("Standing is a constitutional prerequisite to suit. A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it."). To establish standing in Texas, a plaintiff must allege "a concrete injury . . . and a real controversy between the parties that will be resolved by the court." *Id.* at 154. Specifically, the plaintiff must allege a threatened or actual injury—it may not be hypothetical. *See Allstate Indem. Co. v. Forth*, 204 S.W.3d

4

795, 796 (Tex. 2006); *see also DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008) (citations omitted) ("For standing, a plaintiff must be personally aggrieved; his alleged injury must be concrete and particularized, actual or imminent, not hypothetical.").

By its second issue, SPI argues that appellees lack standing to challenge SPI's ordinance because: (1) neither appellee submitted a complete permit application, (2) they cannot establish they would qualify for a permit absent the challenged sections of the ordinance, (3) the unchallenged portions of the ordinance give appellees an alternative basis to obtain a permit, and (4) their challenges to the permit cap are purely speculative.

### 1.    Completed Permit Application

Relying on *Korr, LLC v. County of Gaines*, No. 11-18-00130-CV, 2020 WL 2836491, *2–4 (Tex. App.—Eastland May 29, 2020, no pet.) (mem. op.), SPI argues that neither appellee submitted a complete permit application and therefore neither appellee has standing to bring a claim alleging a threatened or actual injury from the challenged portions of SPI's ordinance. The appellant in *Korr* filed a petition against Gaines County alleging a portion of a county regulation relating to subdivision plat approvals was unconstitutional. *See id.* at *1. Arguing in a plea to the jurisdiction that appellant was not an "owner or holder of an interest" in the subdivision "or any other real property in Gaines County," Gaines County argued that appellant's "suit did not involve a justiciable claim because KORR lacked standing, because KORR's claims were not ripe, and because KORR's claims were moot." *Id.* The trial court granted Gaines County's plea to the jurisdiction. *See id.* at *2. Subsequently, the Eleventh Court of Appeals upheld the trial

court's ruling, finding, among other things, that the appellant "failed to present any evidence that it had been affected by the complained-of regulation or that it had filed or attempted to file a subdivision plat after Gaines County adopted the complained-of regulation." *Id.* at *3.

SPI argues the facts here are similar to those in *Korr* because SPI contends neither appellee has filed a complete application that has been denied, meaning they have not been affected by the complained-of ordinance. However, SPI does not dispute that Surfvive submitted an application which was deemed incomplete by SPI for failure to comply with the restaurant permission requirement as it lacked a signature from a local restaurant approving the food truck. In *Korr*, the court reasoned that the appellant lacked standing because it presented no controverting evidence to the evidence and it could only present hypothetical situations in which it would be affected by the complained of regulation. *See id.* Here, Surfvive applied for a permit but was denied for failure to comply with the restaurant permission requirement of SPI's ordinance. Accordingly, Surfvive's claims as to the restaurant permission requirement are not purely hypothetical. *See DaimlerChrysler Corp.*, 252 S.W.3d at 304–05.

As to the permit cap, appellees argue that it would have been "pointless" for them to apply when the number of permits were capped. However, appellees do not indicate how they were in fact injured by the cap. Merely stating that the cap would have prevented them from obtaining a permit had they applied is presenting a hypothetical situation, not a concrete injury. *See id.*

### 2. Qualifications

SPI further argues that, even absent the challenged portions of the ordinance, appellees have not established that they meet the remaining requirements for a permit. SPI contends that appellees lack standing because they do not qualify under the Texas Department of State Health Services regulations; specifically, SPI states appellees lack a commissary or central preparation facility (CPF). *See* 25 TEX. ADMIN. CODE ANN. § 228.221. Providing no authority to support this contention, we find SPI has waived this argument. *See* TEX. R. APP. P. 38.1(i) (requiring that briefs "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). However, to the extent SPI argues that appellees lack standing because their claims are meritless, we note "a plaintiff does not lack standing simply because he cannot prevail on the merits of his claim; he lacks standing because his claim of injury is too slight for a court to afford redress." *DaimlerChrysler Corp.*, 252 S.W.3d at 305. Therefore, we reject this argument.

### 3. Alternative to CPF

In one paragraph in its standing argument, SPI argues that the restaurant permission requirement is not a barrier, but rather it "provides an alternative" to the requirement, namely, "connect to a CPF/commissary." Again, SPI provides no support or explanation for this contention, thereby waiving this argument. *See* TEX. R. APP. P. 38.1(i). Furthermore, the ordinance clearly states that any applicant "*must* be supported locally and have the signature of an owner or designee of a licensed, free-standing food unit on South Padre Island before being eligible for a permit." SOUTH PADRE ISLAND, TEX., CODE OF ORDINANCES, ch. 10 § 10-31(C)(3) (2020) (emphasis added). This language leaves no

7

room for the alternative approach argued by SPI on appeal.

### 4. Summary

Accordingly, we find that appellees had standing to assert their claim as to the constitutionality of the restaurant permission requirement as Surfvive demonstrated it was personally aggrieved. *See Heckman*, 369 S.W.3d at 152 n.64 (holding that where multiple plaintiffs sue for injunctive or declaratory relief, only one plaintiff must have standing to pursue as much or more relief than any of the other plaintiffs). Because we have determined that neither appellee presented any injury, aside from a hypothetical one, regarding the permit cap, we find that appellees lack standing to assert a claim as to the constitutionality of the ordinance in so far as it relates to the permit cap. *See DaimlerChrysler Corp.*, 252 S.W.3d at 305–07; *see also Korr*, 2020 WL 2836491, at *2– 4. We overrule SPI's second issue as it relates to the restaurant permission requirement and sustain it in so far as it relates to the permit cap.[1]

## B. Substantive Due Course of Law Violation

---

[1] In post-submission letter briefing, SPI raised the issue of mootness, stating that SPI had increased the permit cap. Having found that appellees lacked standing to bring a claim as it relates to the permit cap, we need not address the mootness argument on appeal. *See* TEX. R. APP. P. 47.1.

SPI also argues that the Avalos brothers lack standing to bring a claim as to the restaurant permission requirement because they no longer operate a food truck, having closed their business. We note, however, that the evidence presented by SPI to prove that the Avalos brothers closed their business indicates it could be a temporary closure and such closure does not prevent the Avalos brothers from reopening or engaging in the food truck business. We overrule SPI's mootness arguments as they relate to the Avalos brothers in this regard.

SPI also presented evidence that Surfvive chose not to apply for a permit when told there was one available, after the start of litigation. SPI contends this renders Surfvive's claims moot. Surfvive, however, responded that even with an available permit, the restaurant permission requirement was still in place, which Surfvive argues is unconstitutional, and thus its arguments are justiciable. We agree. We overrule SPI's mootness arguments as they relate to Surfvive in this regard.

8

In its third issue, SPI argues that appellees did not establish a waiver of SPI's immunity. By its fourth and sixth issues, SPI argues that appellees did not establish that the restaurant permission requirement violated substantive due course of law or that it is facially invalid under substantive due course of law.[2] SPI contends that immunity from suit is not waived if appellees' constitutional claims are facially invalid. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011).

SPI challenges the trial court's jurisdiction to consider appellees' claims based upon sovereign immunity. "Sovereign immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Miranda*, 133 S.W.3d at 225–26 (citing *Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999)). To proceed in a suit against state entities and officials, a plaintiff must establish a waiver of immunity, *see Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Jones*, 8 S.W.3d at 638, or that sovereign immunity is inapplicable. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372–73 (Tex. 2009) (sovereign immunity does not prohibit "suits to require state officials to comply with statutory or constitutional provisions"); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995) ("[S]uits for equitable remedies for violation of constitutional rights are not prohibited."). While it is true that sovereign immunity does not bar a suit to vindicate constitutional rights, *Heinrich*, 284 S.W.3d at 372, immunity from suit is not waived if the constitutional claims are facially

---

[2] In its fifth issue and by part of its sixth issue, SPI makes the argument that appellees did not establish a substantive due course of law violation regarding the permit cap, and they did not establish that the permit cap was facially invalid. Having already determined that appellees lacked standing to assert a claim regarding the permit cap, we decline to reach the merits on issue five and the part of issue six related to the permit cap. *See* TEX. R. APP. P. 47.1.

invalid. *See Klumb v. Houst. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015).

Immunity is waived only to the extent the plaintiff pleads a viable constitutional claim. *Id.* at 8. To satisfy this showing, plaintiffs must do more than merely name a cause of action and assert the existence of a constitutional violation. *See generally id.* at 13–14 (concluding the appellants did not present a viable equal protection claim where (1) neither a suspect classification nor a fundamental right was involved, and (2) the appellee's actions were rationally related to certain government interests); *Andrade*, 345 S.W.3d at 11 (considering substance of equal protection claim against Secretary of State in reviewing ruling on a plea to the jurisdiction and explaining that Secretary retained immunity unless the plaintiffs pleaded a "viable claim").

Here, appellees asserted in their petition that the complained of portions of SPI's food truck ordinance violate their "economic liberty rights under Article I, § 19 of the Texas Constitution" by infringing on appellees' "right to earn an honest living in the occupation of one's choice free from government interference." Appellees asserted the complained of portions of the ordinance were unconstitutional "both on its face and as-applied to [appellees]."

### 1. As-Applied

To support their position that the ordinance is unconstitutional as applied to them, appellees analogize their alleged constitutionally protected right to operate their MFUs to the protected economic liberty interest of occupational freedom that was at issue in *Patel v. Texas Department of Licensing & Regulation*. *See* 469 S.W.3d 69 (Tex. 2015). In *Texas Alcoholic Beverage Commission v. Live Oak Brewing Co.*, the court discussed *Patel* at

10

length:

> In *Patel*, the plaintiffs were individuals who practiced commercial eyebrow threading and salon owners employing eyebrow threaders (the Threaders). *Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 73 (Tex. 2015). The Threaders had brought as-applied challenges based on the due course of law clause of the Texas Constitution to licensing statutes and regulations (the cosmetology scheme) that required 750 hours of cosmetology training, largely unrelated to commercial eyebrow threading, to obtain a license to practice. *Id.* at 73–74; *see* TEX. CONST. art. I, § 19. Similar to appellees' claims, the Threaders alleged that the cosmetology scheme "violated their constitutional right 'to earn an honest living in the occupation of one's choice free from unreasonable government interference.'" *Patel*, 469 S.W.3d at 74.
>
> The Texas Supreme Court concluded that the Threaders had met their "high burden" of proving that the cosmetology scheme was unconstitutional as applied to them based on the Texas Constitution due course of law protections. *See id.* at 90. In reaching its conclusion, the Texas Supreme Court set forth the following test for overcoming the presumption of constitutionality:
>
>> To overcome that presumption, the proponent of an as-applied challenge to an economic regulation statute under Section 19's substantive due course of law requirement must demonstrate that either (1) the statute's purpose could not arguably be rationally related to a legitimate governmental interest; or (2) when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest.
>
> *Id.* at 87. The court's analysis in its application of this test focused on the Threaders' constitutional right to occupational freedom and the State's concession that "as many as 320 of the curriculum hours [were] not related to activities that threaders actually perform." *See id.* at 89–90. The evidence showed that the Threaders were entirely shut out from practicing their trade until they completed the "oppressive" required training and that the threader trainees had to pay out-of-pocket expenses for that training "and at the same time lose the opportunity to make money actively practicing their trade." *Id.* at 88–90.

537 S.W.3d 647, 656 (Tex. App.—Austin 2017, pet. denied).

SPI contends that the *Patel* test was meant to be limited to the framework in which it arose, namely "a regulatory prohibition on entry into the profession as a whole." SPI argues that appellees are not barred from entry into the food truck business but rather appellees are losing profits from not being able to operate in a specific location. SPI points to evidence that appellees are in fact capable of and have, either presently or in the past, operated food trucks elsewhere in this state. Thus, SPI argues that appellees have not been barred from engaging in the occupation of their choice, but rather they are merely barred as to the location in which they may engage in their occupation.

To the extent that SPI argues that the ordinance does not deprive appellees of a protected liberty interest, we disagree. SPI relies on the holding in *Texas Southern University v. Villarreal*, 620 S.W.3d 899, 908 (Tex. 2021) for the proposition that because appellees are able to apply for a permit "later and operate elsewhere in the meantime," they have not been deprived of a liberty interest. However, in *Villareal*, a student was dismissed from the law school for failure to maintain the required grade point average. *See id.* at 903. The student argued that the school "mishandled [an] investigation into [an] alleged cheating incident," which led to his dismissal. *Id.* at 904. The student did not challenge the required grade point average, but rather the actions taken by the school to enforce the requirement. *See El Paso Indep. Sch. Dist. v. McIntyre,* 584 S.W.3d 185, 199 (Tex. App.—El Paso 2018, no pet.) (stating that for the equitable rule to apply, the claim must be directed not to the action of a governmental employee but to a rule or a statute).

The Supreme Court of Texas has made clear that its holdings in *Patel* must remain "properly limited to the particular legal framework" in which they were made. *See Hegar*

12

*v. Tex. Small Tobacco Coal.*, 496 S.W.3d 778, 788 n.35 (Tex. 2016). And, as set out in the earlier discussion of appellees' claim, the statute at issue here creates an economic barrier of entry into a given profession in that it inhibits appellees' ability to pursue an economic or professional opportunity. *See Transformative Learning Sys. v. Tex. Educ. Agency*, 572 S.W.3d 281, 293 (Tex. App.—Austin 2018, no pet.).

Accordingly, we follow the guidance as set forth in *Patel* to determine if appellees, the proponent of the as-applied challenge to SPI's ordinance, have overcome the presumption that the ordinance is constitutional. *See* 469 S.W.3d at 87. *Patel* clarified the standard of review for as-applied substantive due course challenges, stating: "the standard of review for as-applied substantive due course challenges to economic regulation statutes includes an accompanying consideration as reflected by cases referenced above: whether the statute's effect as a whole is so unreasonably burdensome that it becomes oppressive in relation to the underlying governmental interest." *Id.* (internal citations omitted). The *Patel* court emphasized that this standard includes the presumption of constitutionality and places a high burden on parties claiming a statute violates substantive due course of law. *See id.*

> In sum, statutes are presumed to be constitutional. To overcome that presumption, the proponent of an as-applied challenge to an economic regulation statute under [§] 19's substantive due course of law requirement must demonstrate that either (1) the statute's purpose could not arguably be rationally related to a legitimate governmental interest; or (2) when considered as a whole, the statute's actual, real-world effect as applied to the challenging party could not arguably be rationally related to, or is so burdensome as to be oppressive in light of, the governmental interest.

*Id.*

"[A]n ordinance violates due process if it 'has no foundation in reason and is a

13

mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety[,] or the public welfare in its proper sense.'" *Draper v. City of Arlington*, 629 S.W.3d 777, 786 (Tex. App.—Fort Worth 2021, pet. denied) (quoting *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 938 (Tex. 1998) (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928))). Whether an ordinance violates due course of law is a legal question, but "the determination will in most instances require the reviewing court to consider the entire record, including evidence offered by the parties." *Patel*, 469 S.W.3d at 87; *see City of San Antonio v. TPLP Off. Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007) ("The trial court resolves disputed fact issues, but the ultimate question of whether an action or ordinance regulating property violates due process is a question of law." (citing *Mayhew*, 964 S.W.2d at 932)).

It is appellees' burden to overcome the presumption that the ordinance is constitutional. *See Patel*, 469 S.W.3d at 87. SPI's stated purpose in enacting the ordinance was "to promote a diversity of foods and benefit the City's economy . . . [and] to provide for regulation of mobile food establishments in order to protect the health, safety[,] and welfare of the citizens."

Appellees assert that SPI's ordinance "relate[s] to one purpose alone—protecting local restaurant owners from food-truck competition." In response, SPI argues that the restaurant permission requirement "protects the general health and safety of the public," a legitimate governmental interest, by providing food truck operators an alternative means to comply with the state's CPF or commissary requirement.

SPI's argument is that creating an alternative to the state's requirement "protects

14

the general health and safety of the public because [SPI] lacks a CPF or commissary from which an MFU can daily operate as required by" the state. However, we have previously discussed SPI's contention that the restaurant permission requirement serves as an "alternative" to the state requirement that a food truck operate from a CPF or commissary. The relevant portion of SPI's ordinance reads as follows:

(C) Mobile Food Unit and Permit Requirements.

(3)     Applicant must be supported locally and have the signature of an owner or designee of a licensed, free-standing food unit on South Padre Island before being eligible for a permit. Limit one local owner's (or designee's) signature per applicant.

*See* SOUTH PADRE ISLAND, TEX., CODE OF ORDINANCES, ch. 10 § 10-31(C)(3) (2020). This requirement contains no language indicating it is an alternative to a state requirement, nor does it indicate that the "free-standing food unit" that provides a signature to allow a food truck to operate on SPI will also operate as a CPF or commissary. Instead, it operates as a separate and distinct requirement in addition to applicable state laws. *See id.* § 10-31(B) ("All [MFUs] shall comply with all applicable laws, including the requirements of this article . . . ."). Accordingly, we disagree with SPI's contention that the restaurant permission requirement serves as an alternative to the state's CPF or commissary requirement.

Appellees argue that SPI enacted the ordinance to protect the "brick and mortar" restaurants from increased competition. Appellees presented evidence that purported to show that SPI included the restaurant permission requirement at the behest of local restaurant owners, who "objected to food-truck competition and opposed [SPI's] original food truck ordinance" which included no restaurant permission requirement. The evidence

15

in the record included the first iteration of the restaurant permission requirement, which was suggested by a local restaurant owner. SPI does not dispute that input was sought from "local businessmen," but contends the ordinance recommendations ultimately came from SPI's health director. SPI argues that the ordinance served to benefit SPI's economy and promote economic development, a legitimate governmental interest. *See EP Hotel Partners, LP v. City of El Paso*, 527 S.W.3d 646, 658 n.11 (Tex. App.—El Paso 2017, no pet.) ("[C]ommentators have recognized that it is a common practice for governmental entities to offer 'economic incentives' as a means of attracting corporations to develop projects within their purview in the hope of stimulating local growth and ensuring prosperity."); *see also* Martin E. Gold, *Economic Development Projects: A Perspectiv*e, 19 Urb. Law. 193, 193 (1987) (observing that economic development projects are characterized by state, city, and local governments' provision of "various concessions to induce private industry into locating, *staying*, or expanding within their borders by providing assistance and subsidies for such private development," such as tax exemptions or abatements, for "long-term benefits for the municipality" (emphasis added)); Patricia J. Askew, *Comment, Take It or Leave It: Eminent Domain for Economic Development—Statutes, Ordinances & Politics, Oh My!*, 12 Tex. Wesleyan L. Rev. 523, 527 (2006) (defining "economic development" as the "process of site selection and community marketing used to attract and *retain businesses* and jobs, and ideally prevent, but at least impede, the cycle of economic decline and urban decay" through influencing "the location decisions of private corporations for the benefit of some particular geographic area, . . . local, regional, state, or national" (footnotes omitted) (emphasis

16

added)).

Victor Baldovinos, SPI's environmental health director, testified in his deposition that he is involved in the inspection of restaurants and MFUs in the city. As part of his role, he is also in charge of the application and permitting process for MFUs. Baldovinos stated that SPI did a thorough investigation to determine a way to allow MFUs to operate in the city. He explained that investigation kept "fairness and the protection of health and safety" in the forefront of all decisions. Appellees contention that SPI was acting to protect "brick and mortar" restaurants based on SPI's inclusion of those restaurants in its ordinance development does not negate SPI's evidence that the ordinance was created to promote economic development, including the legitimate government interest in retaining current businesses and preventing economic decline.

SPI also presented evidence that several food trucks currently operate on SPI, having complied with the ordinance in full. Attached to its motion, SPI included the deposition testimony of Jerry Leal, a food truck owner who operates on SPI. When asked about what he had to do to comply with the restaurant permission requirement, Leal explained that while he was dining on the island, he asked the owner of that particular restaurant if they would sign off on his permit. Upon learning that the owner of this particular restaurant had already signed for another food truck, Leal sought out another restaurant to sign on his behalf, specifically stating: "So I was like, well, I'm going to go and knock on all their doors, like–you know what I'm saying. It's not hard, you know. So that's what I did." Leal explained that he was able to find someone to sign his permit application fairly easily, and went on to testify that he found that the permit process on

17

SPI was not very difficult compared to other cities he has operated in, such as Austin, which he described the permitting process as "overwhelming." SPI also provided evidence that the Avalos brothers never attempted to comply with the ordinance, and that Surfvive, when given the opportunity to comply, chose not to and instead challenged the ordinance.

While appellees contend that the real-world effect as applied to them is oppressive, they have not presented any evidence of how they have been oppressed. Specifically, Surfvive's owner, at her deposition, testified that she "never went to a restaurant owner or tried to go to a restaurant owner" to attempt to comply with SPI's ordinance. While she did receive a signature from a local business on SPI, it was not a restaurant, nor was it in the zoned area for food trucks. She further testified that while she does not believe the restaurant permission requirment should be enforced, she agreed she would be able to comply "if [she] had to."

Accordingly, based on the evidence presented, we conclude that appellees failed to present evidence tending to prove that the food truck ordinance violates their substantive-due-course-of-law rights and thus failed to show that they were likely to prevail on their request for a declaration that the ordinance violates their substantive-due-course-of-law rights under Article 1, § 19 of the Texas Constitution. We find that appellees did not present evidence to rebut the presumption that the ordinance is constitutional. *See Patel*, 469 S.W.3d at 87; *Draper*, 629 S.W.3d at 789.[3] We sustain SPI's third and

---

[3] Appellees assert that they raised both as-applied and facial challenges to the constitutionality of SPI's ordinance. Having determined that appellees did not meet their burden to rebut the presumption that the ordinance is constitutional as-applied to appellees, we necessarily hold that appellee's facial challenge also fails. For a statute to facially violate a constitutional provision, the statute must by its terms always and

fourth issues. We also sustain SPI's sixth issue insofar as it relates to the restaurant permission requirement.

## C. Nominal Damages

A plaintiff may recover nominal damages when its legal rights have been invaded and it either (1) has not sustained an actual loss or (2) has sustained an actual loss but failed to prove the amount of the loss. *Trevino v. Sw. Bell Tel. Co.*, 582 S.W.2d 582, 584 (Tex. App.—Corpus Christi–Edinburg 1979, no writ). Nominal damages are appropriate when a party fails to prove the precise amount of its loss, or a party suffered no actual loss. *See generally id.* at 584. Here, nominal damages were awarded in the amount of one dollar. In its first issue SPI challenges the trial court's award of nominal damages, arguing SPI is immune. Having determined the trial court erred in denying SPI's plea to the jurisdiction, we need not address the merits of SPI's immunity argument as appellees did not establish a violation of their rights. *See id.* Accordingly, because the trial court erred in awarding nominal damages, we sustain SPI's first issue.

### III.    CONCLUSION

We reverse the judgment of the trial court, render judgment granting SPI's plea to the jurisdiction, and dismiss appellees' claims.

NORA L. LONGORIA
Justice

Delivered and filed on the
9th day of June, 2022.

---

in every instance operate unconstitutionally. *Barshop v. Medina County Underground Water Conserv. Dist.*, 925 S.W.2d 618, 623 (Tex. 1996). To clear the facially unconstitutional hurdle, the statute must be unconstitutional in every application. *See In re S.N.*, 287 S.W.3d 183, 194 (Tex. App.—Houston [14th Dist.] 2009, no pet.)*.*