In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00158-CV

_____

CITY OF HOUSTON, Appellant
v.

FESTIVAL PROPERTIES, INC., Appellee

_____

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 23-09-13859-CV

_____

**MEMORANDUM OPINION**

In this interlocutory appeal, the City of Houston (the City) appeals from the trial court's order denying the City's Plea to the Jurisdiction against Festival Properties, Inc. (Festival). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). For the reasons discussed below, we reverse the trial court's order and render a decision in favor of the City dismissing Festival's claims.

*Background*

Festival owns a 10.446-acre property on the south side of Northpark Drive, east of Highway 59 in Montgomery County. On that property, surrounded by other buildings and businesses, is a large multiplex movie theater. In 2022, the City approved the "Northpark Drive Project[,]" an expansion of 2.18 miles to make Northpark Drive a six-lane highway, including adding overpasses. In its Original Petition, Festival alleges the City's Northpark Drive Project closed two "Critical Drives" that are "outside the acquisition area" which provide "critical ingress and egress to the property."[1] Festival claims these "Critical Drives" are the only direct access point to the movie theater parking lot on its property, and Festival's main access to Northpark Drive. Festival claims that those "Critical Drives" work in tandem to create a loop to help traffic flow in and out of the movie theater parking lot during peak, high-congestion times. According to Festival, the "Critical Drives" are imperative in operating a movie theater and are "crucial to the commercial viability of Festival's property." In its petition, Festival pled for inverse condemnation, arguing the City's taking of the two "Critical Drives" for its Northpark Drive Project "materially and substantially" impairs the use of its

---

[1]The parties refer to these access points as both "Critical Drives," and "Critical Access Drives." For consistency, we will refer to them as "Critical Drives."

property as a multiplex movie theater and seeking monetary relief of more than $1,000,000. Festival's Original Petition includes the following illustrative graphic regarding access to the property.



After answering with a general denial and various affirmative defenses, the City filed a Plea to the Jurisdiction, seeking dismissal of Festival's claims based on governmental immunity. According to the City, to overcome governmental immunity and assert a claim for inverse condemnation under Article I, Section 17 of the Texas Constitution, Festival must show that access to the property "is materially and substantially impaired" by the City's actions. This, the City says Festival cannot

do because there are still several public road access points by which patrons continue to have access to the movie theater.

Festival filed a response to the City's Plea to the Jurisdiction, arguing the remaining access points are insufficient for the movie theater traffic on its property. According to Festival, the other driveways require customers to drive through fast-food parking lots or behind the movie theater, an area typically used for commercial vehicles, before reaching the movie theater parking lot. In reply, the City argues that requiring patrons to take a "a more 'circuitous route to reach the property in question[,]'" is not actionable.

After a hearing, the trial court denied the City's Plea to the Jurisdiction. The City then timely filed this interlocutory appeal, arguing in a single issue that the trial court erred in denying its Plea to the Jurisdiction based on governmental immunity.

*Governmental Immunity*

As a municipal government, the City of Houston is generally entitled to governmental immunity which shields the City from suit unless such immunity has been waived. *City of Hous. v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014). Courts are without jurisdiction to adjudicate claims against a municipality in the absence of a waiver of immunity, but it is well established that the Texas Constitution waives government immunity for inverse condemnation claims. *Id. See* Tex. Const. art. I, § 17. "Nevertheless, such a claim is predicated upon a viable allegation of taking." *Id.*

4

The City retains immunity in the absence of a properly pleaded takings claim. *Hearts Bluff Game Ranch v. State*, 381 S.W.3d 468, 476 (Tex. 2012). "Under such circumstances, a court must sustain a properly raised plea to the jurisdiction." *Carlson*, 451 S.W.3d at 830. We review a trial court's ruling on a plea to the jurisdiction de novo. *Id*. Construing the pleadings favorably to the plaintiff, we determine whether the pleadings "allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case." *Hearts Bluff*, 381 S.W.3d at 476.

*Constitutional Takings and Inverse Condemnation*

The Texas Constitution provides, "No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made[.]" Tex. Const. art. I, § 17(a). "In order to recover under the theory that property has been taken under this section of the Constitution, [a] plaintiff must establish that the governmental entity intentionally performed certain acts that resulted in a 'taking' of one's property for public use." *Sabine River Auth. of Tex. v. Hughes*, 92 S.W.3d 640, 641-42 (Tex. App.—Beaumont 2002, pet. denied). "A taking is the acquisition, damage, or destruction of property via physical or regulatory means." *Carlson*, 451 S.W.3d at 831. "[P]roperty has been damaged for a public use within the meaning of the Constitution when access is materially and substantially impaired even though there has not been a deprivation of all reasonable access." *City of Waco v. Texland Corp*., 446 S.W.2d 1, 2 (Tex. 1969)).

5

Whether the property has been materially and substantially impaired is a threshold question we review de novo. *State v. Dawmar Partners, Ltd.*, 267 S.W.3d 875, 878 (Tex. 2008). To determine what constitutes reasonable access we examine not only the closed access points but also the remaining access points to the property. *See City of San Antonio v. TPLP Off. Park Props.*, 218 S.W.3d 60, 66 (Tex. 2007). "Closing an access point and merely causing diversion of traffic or circuity of travel does not result in a compensable taking." *Id.* at 66-67. "[N]o right to compensation extends to a property owner who has *reasonable* access to his property after the construction of the public improvement because the benefits of private ownership have been preserved." *State v. Heal*, 917 S.W.2d 6, 10 (Tex. 1996) (citation omitted) (emphasis in original).

*Analysis*

Festival's petition alleges the City's project expanding Northpark Drive includes closing two driveways which previously provided access to Festival's property via Northpark. The graphic included in Festival's petition labels the two driveways on Northpark as "critical access drives." According to Festival, "the original owner of the shopping center established deed restrictions that guaranteed multiple 'Critical Drives' benefitting Festival's property. Festival alleges,

> The remaining driveways are primarily suited to serve the shopping center's outparcels and are not adequate for Festival's purposes. Upon the loss of these driveways, Festival's property will not be able to

6

accommodate the volume of moviegoers who regularly enter and exit simultaneously at peak times. As a result, the property will be considerably less valuable to multiplex tenants and potential buyers and may require repurposing. This impairment of access is material and substantial in light of the existing use of the property, resulting in substantial damages to Festival and to the market value of its property that it seeks to recover in this proceeding.

In its plea to the jurisdiction, the City asserts Festival's petition fails to allege a viable inverse condemnation claim because access to the property will not be materially and substantially impaired by the closing of two access points on Northpark since other access points will remain open to all three thoroughfares bordering the property. *See TPLP Off. Park Props.*, 218 S.W.3d at 66; *Heal*, 917 S.W.2d at 9. In response, Festival does not deny that the property still has multiple access points surrounding its property, but contends that the loss of the two access drives along Northpark are unique to the property's use as a movie theater with high traffic entering and exiting the parking lot simultaneously and are "imperative to its successful function in the competitive multiplex market, where demand is highly reactive to access issues due to the time-sensitive nature of the movie theater experience."

We are unpersuaded by Festival's arguments. While we may consider the property's specific use in determining whether a property was materially and substantially impaired by a government taking under Article I, Section 17 of the Texas Constitution, changes in traffic patterns, diversion in traffic, and even

7

extended time reaching the property do not render access to the property materially and substantially impaired. *See State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993) ("we have often disallowed, and never allowed, recovery in an inverse condemnation case for damages resulting from a diversion of traffic or a circuity of travel[]"); *Tex. DOT v. C-5 Holdings LLC*, No. 04-21-00292-CV, 2023 Tex. App. LEXIS 7909, at *11–12 (Tex. App.—San Antonio Oct. 18, 2023) (concluding the trial court erred by denying the government's plea to the jurisdiction where plaintiffs had continual access to their property via another public road, although new route was circuitous and significantly less convenient than the other direct access point); *Church v. City of Alvin*, No. 01-13-00865-CV, 2015 Tex. App. LEXIS 10114, at *15 (Tex. App.— Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.) ("In considering whether impaired access is material and substantial, courts take into account existing uses of the property that required particular access."); *see also* Tex. Const. art. I, § 17. It is undisputed that Festival maintains several access points to its property from three separate public roads. Although only one of these driveways provides direct access to the multiplex theater, courts have long rejected the proposition that increased traffic congestion is a material and substantial impairment to demonstrate a taking to overcome governmental immunity. *See TPLP Off. Park Props.*, 218 S.W.3d at 66–67 ("diminished access is not compensable if suitable access remains," even where the lease holder lost profits and access was eliminated to one driveway used

8

by 80% of the property's tenants); *Cnty. of Bexar v. Santikos*, 144 S.W.3d 455, 460 (Tex. 2004) (explaining that circuity of travel within a property is not more compensable than circuity of travel around it); *Heal*, 917 S.W.2d at 11 (evidence demonstrating new highway configuration could cause confusion, increase traffic congestion, and make left turns more difficult and hazardous established inconvenience but did not constitute material and substantial impairment of access); *see also State v. Momin Props., Inc.*, 409 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (citations omitted) ("It is also well-settled that diminution in the value of property due to diversion of traffic, diminished exposure to traffic, or altered accessibility to the roadway does not amount to a material and substantial impairment of access."); *State v. Bhalesha*, 273 S.W.3d 694, 702 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citation omitted) (concluding that although the traffic had to take a more circuitous route to get to a supermarket, access was not materially and substantially impaired, because the supermarket had "never been without access to a public road[]"); *Burris v. Metro. Transit Auth. of Harris Cnty.*, 266 S.W.3d 16, 24 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that although access to the plaintiff's property was impaired, it was not a material and substantial impairment because he retained public road access).

We conclude the trial court erred in denying the City's plea to the jurisdiction, because the factual allegations contained in Festival's petition do not amount to a

constitutional taking by material and substantial impairment of access to its property. In its brief, Festival argues that if this Court determines that Festival's pleading is insufficient, Festival should be afforded the opportunity to amend its pleadings to cure the defect. Where a pleading does not negate jurisdiction but merely fails to allege facts sufficient to affirmatively demonstrate jurisdiction, "the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). However, if a plaintiff pleads facts that affirmatively negate jurisdiction, the trial court may grant the governmental unit's plea to the jurisdiction without allowing the plaintiff an opportunity to amend. *Id*. Here, Festival's pleading affirmatively alleges that after the closing of the two entrances on Northpark, the property continues to have access points on Northpark, Loop 494 and Highway 59. The petition includes a graphic affirmatively demonstrating the property continues to be served by multiple access points. We conclude Festival's pleading affirmatively negates jurisdiction. This is not a curable pleading defect, and Festival is not entitled to an opportunity to amend.

### Conclusion

Having concluded that Festival's petition does not allege a viable claim for inverse condemnation, we reverse the trial court's order denying the City's Plea to

10

the Jurisdiction and render judgment dismissing Festival's claims for want of jurisdiction.

REVERSED AND RENDERED.

KENT CHAMBERS
Justice

Submitted on February 27, 2025
Opinion Delivered May 1, 2025

Before Johnson, Wright and Chambers, JJ.