Opinion issued February 26, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00684-CV

———————————

**CITY OF DICKINSON, TEXAS AND SEAN SKIPWORTH, IN HIS OFFICIAL CAPACITY AS MAYOR OF DICKINSON, TEXAS, Appellants**

**v.**

**CRYSTAL CRUISE INVESTMENTS, LLC D/B/A NAUTICAL NAVY AND HARRISON YAT, INDIVIDUALLY AND AS MANAGING MEMBER OF CRYSTAL CRUISE INVESTMENTS, LLC, Appellees**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 22-CV-1659**

---

## O P I N I O N

Crystal Cruise Investments, LLC d/b/a Nautical Navy ("Crystal Cruise"), owns, markets, and rents out various short-term rental properties, including 5122

Casa Grande Street in Dickinson (the property). Crystal Cruise started renting out the property without first securing the specific use permit required by the City's zoning ordinance regulating vacation rentals (the "vacation rental ordinance").

After Dickinson notified Crystal Cruise that its operation of the property violated the vacation rental ordinance, Crystal Cruise filed suit against Dickinson and its Mayor, Sean Skipworth, challenging the constitutionality of the ordinance. The trial court ruled in favor of Crystal Cruise, holding that the vacation rental ordinance violated Crystal Cruise's rights to due course of law and equal protection guaranteed by the Texas Constitution.

In seven issues, Dickinson contends that the trial court erred in invalidating its vacation rental ordinance and in failing to award Dickinson statutory damages against Crystal Cruise and Harrison Yat, Crystal Cruise's managing member (collectively, Crystal Cruise) for violation of the ordinance.

We reverse the trial court's judgment, render judgment for the City on Crystal Cruise's claims against it, and remand the City's counterclaim against Crystal Cruise, Yat, and Crystal Cruise's co-manager, Russell Griffin, for further proceedings consistent with this opinion.

## Background

### *Dickinson enacts its vacation rental ordinance in 2016.*

In 2016, Dickinson adopted amendments to its ordinances to regulate bed-and-breakfast and vacation-rental properties. In the preamble to Ordinance 840-2016, the City Council found "that it is in the best interest of the health, safety, and welfare" of Dickinson's residents "to require minimum regulations" for bed and breakfast and vacation rental properties and that the regulations contained in Ordinance 840-2016 were "in the best interest of the health, safety, and welfare" of Dickinson's residents. DICKINSON, TEX., ORDINANCE No. 840-2016 (Mar. 22, 2016) (codified in various provisions of Dickinson, Texas Code of Ordinances Chapter 18). The ordinance defines a vacation rental as "a residential facility that is offered for rental for a period not to exceed thirty (30) days." DICKINSON, TEX., CODE OF ORDINANCES, ch.18, art V, § 18-11. It allows vacation rentals in Dickinson's rural residential district[1] and its conventional residential district[2] if the owner is approved for a specific use permit. *Id.* § 18-61(c).

---

[1]   The "rural residential" district designation applies to areas with "conventional detached single-family dwellings at a density not exceeding one (1) dwelling unit per acre . . . where adequate public facilities are not available to support higher density urban development." DICKINSON, TEX., CODE OF ORDINANCES, ch.18, art V, § 18-49.

[2]   The "conventional residential" district designation applies to areas with "conventional detached single-family dwellings . . . where adequate public facilities exist, and residential development is appropriate given the surrounding land uses and neighborhoods." *Id.* § 18-50.

3

The vacation rental ordinance prescribes that a vacation rental property maintain a "residential feel and character" and "not unnecessarily intrude upon the adjacent neighbors." *Id.* It also requires the vacation rental owner to install certain safety features, abide by signage regulation, and provide minimum number of parking spaces for each room rented. And the ordinance prohibits on-street parking.

Maximum occupancy for a vacation rental would be "determined in each individual specific use application based on the number of rooms, beds, parking, neighborhood input, and any other factor deemed to be relevant by the . . . Commission or City Council."

Relevant factors for determining whether to approve a special use permit for a vacation rental include:

a. The proposed occupancy and the size of the property, and whether a smaller occupancy level is appropriate;

b. Setbacks and proximity to other dwellings;

c. Rental regulations (such as no large parties, no extra guests) imposed by the owner and the degree of owner involvement in property management;

d. Occupant access to waterways and other environmentally sensitive areas;

e. Vehicle access and onsite parking and the number of parking spaces available; and

f. Compliance with all state, county, and city ordinances, laws, rules, and regulations including the building codes and fire codes.

*Id.* § 18-61(c).

Dickinson's Planning and Zoning Commission (the Commission) and City Council must hold public hearings on applications for specific use permits. *Id.* § 18-59. "Each specific use permit request shall be considered on its merits and with regard to its specific location, the adjacent land uses, and such other factors as may be relevant to a particular application . . . ." *Id.* In addition to requiring specific use permits for vacation rentals, city ordinance requires specific use permits to operate bed-and-breakfasts, golf courses, group day care homes, nonprofit recreational facilities, schools, and special event centers in rural residential and conventional residential districts. *Id.* § 18-58.

### *Crystal Cruise buys the property in 2022 and operates it as a vacation rental.*

Casa Grande Street is in Dickinson's conventional residential district. The narrow, dead-end street is lined on both sides with single-family homes. The property is on the cul-de-sac at the end of the street, where the homes have backyard access to Dickinson Bayou.

In April 2022, Crystal Cruise bought the property and offered it for short-term rental on various online property management platforms, including Beachbox and AirBnB. Crystal Cruise did not apply for a specific use permit before it began renting the property to short-term lessees. Neighborhood residents called Dickinson officials to complain about noise and other disturbances at the property, which alerted Dickinson to Crystal Cruise's unauthorized use of the property.

***Dickinson notifies Crystal Cruise that it must obtain a specific use permit.***

In August 2022, Dickinson notified Crystal Cruise that its operation of the property without a specific use permit violated the City's vacation rental ordinance. Dickinson warned Crystal Cruise that it was required to obtain the permit before it could rent the property to other lessees.

***Crystal Cruise brings this suit.***

Yat filled out part of an application for a specific use permit. Before completing the application, though, Crystal Cruise sued Dickinson and its mayor. Crystal Cruise asserted that Dickinson's vacation rental ordinance violated various rights guaranteed by the Texas Constitution, including Crystal Cruise's substantive rights under the due course of law provision and to the use and enjoyment of its private property.[3]

Crystal Cruise also maintained that the vacation rental ordinance violated its constitutional right to equal protection, noting that while the vacation rental ordinance placed multiple restrictions on licensees who rent their properties for less than 30 days, no comparable regulations applied to "adjacent properties that are rented for a term longer than 30 days." According to Crystal Cruise, this "disparate treatment of short-term rental licensees [wa]s not rationally related to any legitimate

---

[3] Crystal Cruise's pleading also claimed that the ordinance violated its right to freedom of assembly, but Crystal Cruise abandoned this claims. Thus, we do not address the City's sixth issue.

state interest," and was "more burdensome than necessary" to address any potential harm.

As to Mayor Skipworth, Crystal Cruise asserted that the Mayor's "execution" of the vacation rental ordinance "constitute[d] an ultra vires act that exceeds the City's lawful zoning authority and must be struck down." Crystal Cruise asked the trial court to declare the vacation rental ordinance unconstitutional and enjoin the ordinance's enforcement.

Dickinson brought a counterclaim against Crystal Cruise, Yat, and Griffin under Local Government Code Chapter 54, which allows a municipality to bring a civil action to enforce a zoning ordinance and entitles it to $1,000.00 per day per violation for violations of its ordinances. *See* TEX. LOC. GOV'T CODE § 54.012(b). Dickinson also requested that the trial court enjoin Crystal Cruise and Yat from continuing to use the property as a vacation rental without obtaining a specific use permit. *See id.* § 54.012(c).

### *The trial court temporarily enjoins Crystal Cruise from operating the property as a vacation rental.*

The trial court ordered the parties to complete the specific use permitting process and abated the case pending its completion. Crystal Cruise submitted a completed specific use permit application on November 7, 2022. When Crystal Cruise indicated to Dickinson that it planned to continue to operate the property as a vacation rental while its application was pending, though, Dickinson sought a

7

temporary injunction to prevent Crystal Cruise from operating the property without a specific use permit.

In October 2022, the trial court held an evidentiary hearing on Dickinson's application for a temporary injunction. Yat testified that before Crystal Cruise bought the property, its agent reviewed the deed restrictions and looked for other vacation rentals in the area but did not look into whether any municipal ordinance regulated the property's use as a vacation rental. The 4,000-5,000 square-foot home has eight bedrooms. Crystal Cruise advertised the property as accommodating up to 32 people, but Yat stated that special approval was required for more than 16 people.

Casa Grande Street resident Lindsey Suarez testified that she and her family live in the home next to the property. When the property was rented, it was "very loud because people are on vacation; and that's what you do when you're on vacation. You have a good time." She heard loud music and yelling from the property as recently as the previous Wednesday. On a recent Friday evening, the cul-de-sac was full of cars, some double-parked. Suarez noticed a man sitting in his car for a while, which made her nervous, so she asked her husband to keep an eye on him. Suarez's husband testified that the man eventually got out of the car, urinated in the middle of the street, then stumbled onto the property.

Since the property began operating as a short-term rental, Suarez noted, the increase in traffic on Casa Grande Street was "exponential." Only about 60 people

live on Casa Grande Street, "so potentially bringing in 30 new people every time" the property is rented meant a lot of cars and traffic. The children in the neighborhood couldn't ride their bikes around the neighborhood like they used to because of it.

Suarez also explained that because Casa Grande Street was not a through street, emergency vehicles that came onto the street used the cul-de-sac to turn around. She noted several instances when the street was blocked by cars with watercraft in tow that were parked on the cul-de-sac and by other cars that were double-parked on the cul-de-sac. Other residents of Casa Grande Street gave similar testimony, expressing concern for the safety of the neighborhood children while riding bicycles or playing outside.

The trial court granted the City a temporary injunction.

### Dickinson denied Crystal Cruise's application for a specific use permit.

The Commission held a public hearing on Crystal Cruise's specific use application, after which the Commission voted unanimously to recommend to City Council that the application be denied. City Council then held a public hearing on Crystal Cruise's application, after which it voted unanimously to deny the application. The City denied Crystal Cruise's specific use permit application because having a vacation rental on Casa Grande Street would "impair[] the quiet seclusion of the residential neighborhood."

At the bench trial, the parties agreed that the trial court should consider the testimony offered at the temporary injunction hearing as evidence. The trial court also heard testimony from Griffin, the other managing member of Crystal Cruise, about Crystal Cruise's application for a specific use permit, and he confirmed that the application proposed a maximum occupancy of 30 people.

Suarez testified at the temporary injunction hearing that the property had been occupied up to five times since the trial court temporarily enjoined the appellees from using the property as a vacation rental without a specific use permit. At the bench trial, though, Griffin stated that the property "had no rentals" since the trial court entered the temporary injunction. He addressed the neighbors' observation of guests at the property, explaining that he and Yat had "filled [it] with friends and family" but had not rented it out.

Dickinson's Assistant City Manager, Chaise Cary, testified about Crystal Cruise's special use permit application process. He recounted that the Commission recommended denial of Crystal Cruise's application and City Council denied the application. Cary understood that "a lot of it" was because of the property's advertising for 30 occupants in a conventional residential neighborhood and the many complaints the City had received from other neighborhood residents that that the use of the property as a vacation rental didn't fit in the neighborhood. Cary explained that the neighborhood was "quiet, quaint," and there were a lot of children.

The property was "being operated more like a hotel in a residential neighborhood with no management, no front desk, no security."

Cary added that the same problems with noise and parking would arise "over and over and over again" with short-term rentals, so law enforcement would have to expend greater resources "educating" people staying at short-term rentals than they would with longer-term lessees.

### *The trial court entered judgment for Crystal Cruise.*

The trial court granted Crystal Cruise's request for relief in part, declaring that the City's prohibition of vacation rentals in residential areas without a specific use permit was "ultra vires, unconstitutional, void, and unenforceable" because (1) the vacation rental ordinance was not rationally related to a legitimate government interest and (2) Dickinson did not provide a rational basis that justified its disparate treatment between short-term rentals and long-term rentals. The trial court also enjoined Dickinson from enforcing its vacation rental ordinance.

## Constitutional Claims

### A.    Standard of review and applicable law

The City asserts that the trial court erred in concluding that Dickinson's 2016 vacation rental ordinance arbitrarily deprives Crystal Cruise of its property rights in violation of the Texas Constitution's due process and equal protection provisions. The ultimate question of whether a zoning ordinance violates due process or equal

protection is a question of law, albeit one that requires us to consider the entire record. *See Patel v. Tex. Dep't of Lic. & Reg.*, 469 S.W.3d 69, 87 (Tex. 2015); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 932 (Tex. 1998).

Zoning ordinances and land-use ordinances are valid exercises of a city's police power to safeguard the health, comfort, and general welfare of its citizens. *See Truong v. City of Houston*, 99 S.W.3d 204, 211 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see* TEX. LOC. GOV'T CODE § 211.001 (explaining that power to effect zoning regulation was "for the purpose of promoting the public health, safety, morals, or general welfare"); *see also Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 9 (1974) (observing that a city's police power "is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.") *quoted in Draper v. City of Arlington*, 629 S.W.3d 777, 786 (Tex. App.—Fort Worth 2021, pet. denied). As a home-rule city, Dickinson has the full power of self-government and looks to state law only for limits on its powers. *See* DICKINSON, TEX., CODE OF ORDINANCES, art 2.01; *see also* TEX. CONST. art. XI, § 5; *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

B.      **The vacation rental ordinance does not violate Crystal Cruise's right to due course of law as protected by the Texas Constitution.**

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, or privileges or immunities . . . except by due course of the law of the land." TEX. CONST., art. I, § 19. Even so, Texas law

12

recognizes that the right to lease property "can be subject to restriction or regulation under certain circumstances." *Zaatari v. City of Austin*, 615 S.W.3d 172, 191 (Tex. App.—Austin 2019, pet. denied).

We must first determine whether Crystal Cruise has alleged the deprivation of an interest the due course of law clause protects. *See Tex. Dep't of State Health Servs. v. Crown Distrib. LLC*, 647 S.W.3d 648, 653 (Tex. 2022). Substantive due-process rights do not attach unless the party has a liberty or property interest that is entitled to constitutional protection. *See Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018); *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 15 (Tex. 2015). A constitutionally protected right must be a "vested right," which is something "more than a mere expectancy based upon an anticipated continuance of an existing law." *Klumb*, 458 S.W.3d at 15, *quoted in Mbogo v. City of Dallas*, No. 05-17-00879-CV, 2018 WL 3198398, at *8 (Tex. App.—Dallas June 29, 2018, pet. denied) (mem. op.).

A right is "vested" when it "has some definitive, rather than merely potential existence." *City of Houston v. Guthrie*, 332 S.W.3d 578, 597 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Under this Court's precedent, the right to lease is not absolute and does not "establish[ ] a vested property interest." *Id.*; *see also City of LaMarque v. Braskey*, 216 S.W.3d 861, 863–64 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (explaining that "[p]roperty owners do not have a constitutionally

protected vested right to use real property in any certain way" and holding that ordinance prohibiting property's use as a cat shelter was not a threat to vested property rights). Further, "property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made." *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972), *quoted in Braskey*, 216 S.W.3d at 863.

Dickinson's vacation rental ordinance was in place for six years before Crystal Cruise bought the property, so under this Court's precedent, Crystal Cruise cannot show that it has any vested right to use the property as a vacation rental as a matter of law.[4] We recognize that the Second Court of Appeals' decision in *City of Grapevine v. Muns* conflicts with our precedent. *See* 651 S.W.3d 317 (Tex. App.— Fort Worth 2021), *pet. denied*, 671 S.W.3d 675 (Tex. 2023).

In *Muns*, the Fort Worth Court of Appeals held that the plaintiffs had "a fundamental leasing right arising from their property ownership" and thus had "a vested right to lease their properties" that was "sufficient to support a viable due course of law claim."[5] *Id.* at 347. As we held in *Cauthorn,* "[i]s not clear that *Muns*

---

[4] We do not consider whether the ordinance is "unduly burdensome" because that consideration does not apply where the property owner does not have a vested interest at stake. *See Patel v. Tex. Dep't of Lic. & Reg.*, 469 S.W.3d 69, 87 (Tex. 2015).

[5] The court in *Muns* did not conduct a rational basis review, saving that review for the merits on remand. 651 S.W.3d 317, 347 (Tex. App.—Fort Worth 2021) ("Whether the durational restrictions imposed by the STR Ordinance violate the

14

represents a consensus view." *Cauthorn v. Pirates Prop. Owners' Ass'n*, 679 S.W. 876, 883 (Tex. App.—Houston [1st Dist.] 2023, pet. denied). Moreover, even if Crystal Cruise had a vested right here, the record does not support the trial court's conclusion that the vacation rental ordinance violated the constitutional protection to due course of law.

To satisfy the Texas Constitution's due course of law guarantee, "an ordinance must be 'designed to accomplish an objective within the government's police power' and be rationally related to the ordinance's purpose." *Draper*, 629 S.W.3d at 786 (quoting *Mayhew*, 964 S.W.2d at 938). Courts must presume that city ordinances, like the vacation rental ordinance challenged here, are valid. *Powell v. City of Houston*, 628 S.W.3d 838, 842 (Tex. 2021); *see Safe Water Found. of Tex. v. City of Houston*, 661 S.W.2d 190, 192 (Tex. App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). An ordinance violates due process only if it "'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public morals, the public safety[,] or the public welfare in its proper sense.'" *Mayhew*, 964 S.W.2d at 938 (quoting *Nectow v. City of Cambridge*, 277 U.S. 183, 187–88 (1928)).

Homeowners' due-course-of-law rights regarding their right to lease goes to the case's merits, an altogether improper inquiry at this stage of the case."), *pet. denied*, 671 S.W.3d 675 (Tex. 2023).

15

A plaintiff challenging the validity of an ordinance bears the burden to show that the ordinance "'bears no substantial relationship to the health, safety, morals or general welfare of the community.'" *City of Pharr v. Tippitt*, 616 S.W.2d 173, 176 (Tex. 1981) (quoting *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 402 (Tex.1964)). This is an "extraordinary burden." *Benners*, 485 S.W.2d at 779. To satisfy it, the plaintiff must do more than show that reasonable minds may differ about whether a particular zoning ordinance has a substantial relationship to public health, safety, morals, or general welfare. *See Powell*, 628 S.W.3d at 842; *City of Pharr*, 616 S.W.2d at 176.

In conducting the rational-basis review applicable here, we consider (1) whether the challenged action has a rational basis and, if so (2) whether use of the challenged classification would reasonably promote its purpose. *Klumb*, 458 S.W.3d at 13. These considerations are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993), *quoted in Klumb*, 458 S.W.3d at 13. For that reason, it does not matter whether the ordinance is effective, as long as "the enacting body could have rationally believed at the time of enactment that the ordinance would promote its objective." *Mayhew*, 964 S.W.2d at 938. If it is at least "fairly debatable" that the ordinance is rationally related to a legitimate

government objective, the ordinance must be upheld. *Id.*; *see City of San Antonio v. TPLP Off. Park Props.*, 218 S.W.3d 60, 65 (Tex. 2007).

The trial court did not acknowledge that it was bound by *Guthrie*, hold Crystal Cruise to its stringent burden of proof, or apply the deferential standard for upholding the validity of a zoning ordinance in declaring Dickinson's vacation rental ordinance unconstitutional. In granting Crystal Cruise's request for declaratory relief, the trial court held that Dickinson "did not provide a rational basis that justified its disparate treatment between short-term rentals and long-term rentals." In its findings of fact and conclusions of law, the trial court noted that the City "produced some evidence" that there were complaints related to the property but there was "no evidence" that any noise or other citations issued for activities at the property while it was rented as a vacation rental. Conspicuously absent is any express finding that Crystal Cruise showed that the ordinance bore "no substantial relationship to the health, safety, morals or general welfare of the community." *See City of Pharr*, 616 S.W.2d at 176.

The evidence on the issues material to determining whether the vacation rental ordinance satisfies due course of law is largely undisputed. As to the first prong of our inquiry—whether the vacation rental ordinance has a rational basis—the City Council passed the vacation rental ordinance based on its finding that regulating vacation rentals was "in the best interest of the health, safety, and welfare" of its

17

citizens. DICKINSON, TEX., ORDINANCE No. 840-2016 (preamble). Approval of specific use permit for a vacation rental requires that "the residential feel and character of a vacation rental property . . . be maintained and not unnecessarily intrude upon the adjacent neighbors." DICKINSON, TEX., CODE OF ORDINANCES, ch.18, art V, § 18-61(c). These considerations provide a rational basis for regulating land use. *See Mayhew*, 964 S.W.2d at 938; *Draper*, 629 S.W.3d at 786.

As for the second prong, the evidence also shows that Dickinson's different treatment of vacation rentals reasonably promotes the purpose of the ordinance. Notably, the ordinance does not create an outright ban on vacation rentals. In determining whether to approve a specific use permit for a vacation rental, the Commission and City Council consider the "number of rooms, beds, parking," and "neighborhood input." Consideration of these factors reflect the City's interest in preserving the residential character of its various neighborhoods and the health, comfort, and general welfare of its citizens. *See Truong*, 99 S.W.3d at 210–11. It allows for approval of a specific use permit where a vacation rental may be fine, such as in a neighborhood with large lots and through streets, and denial of a specific use permit where lot sizes and street conditions would make the presence of a vacation rental disruptive.

The evidence of neighborhood disturbances caused by Crystal Cruise's own unpermitted use of the property as a vacation rental shows, through negation, that

18

the restrictions imposed by the ordinance reasonably promote its purpose. Neighborhood residents testified that the large groups that periodically descended on the property created problems with noise and traffic. The factors considered by the Commission and City Council in deciding whether to grant a specific use permit focus on the proposed occupancy, the size of the property, and whether a smaller occupancy level is appropriate.

The ordinance also contains an on-street parking ban for permitted vacation rentals. There is no dispute that the property's visitors did not always obey that ban. The neighborhood residents testified about parking problems on Casa Grande Street's cul-de-sac caused by on-street parking by visitors at the property. They also expressed concern about increased traffic from the use of the property as a short-term rental and the dangers it created for the neighborhood children who played and rode bikes on the street.

The record shows that the vacation rental ordinance has a rational basis and its use reasonably promotes its purpose. *See Klumb*, 458 S.W.3d at 13. Crystal Cruise has not shown that the vacation rental ordinance "bears no substantial relationship to the health, safety, morals or general welfare of the community." *City of Pharr*, 616 S.W.2d at 176. For these reasons, we hold that the trial court erred in concluding that the vacation rental ordinance violated Crystal Cruise's right to due course of law.

**C.** **The vacation rental ordinance does not violate Crystal Cruise's right to equal protection under the Texas Constitution.**

In its findings of fact and conclusions of law, the trial court found that the City failed to provide "a rational basis that justifies the disparate treatment between a short-term and long-term rental." To establish an equal protection claim, a deprived party must show "(1) it was treated differently from other similarly situated persons, and (2) no reasonable basis exists for the disparate treatment." *Cadena Comercial USA Corp. v. Tex. Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 335 (Tex. 2017); *see* TEX. CONST.. Art. 1 § 3; *Draper*, 629 S.W.3d at 792 (rational-basis review applies to zoning decisions unless ordinance discriminates against suspect class).

Crystal Cruise asserts that different treatment of a rental of 30 days or less and a longer-term rental is arbitrary. But the Texas Legislature has made this distinction. The Tax Code defines "short-term rental" as "the rental of all or part of a residential property to a person who is not a permanent resident . . . ." TEX. TAX CODE § 156.001(b). It defines "permanent resident" as "a person who has the right to use or possess . . . [lodging accommodations] for at least 30 consecutive days . . . ." *Id.* § 156.101. And it requires a lessor to collect a six percent occupancy tax from a person who rents a short-term rental. *Id.* §§ 156.052-156.053.

The City's vacation rental ordinance requires the owner of a vacation rental approved for a specific use permit to provide a valid state taxpayer number and a completed copy of the State of Texas Hotel Occupancy Tax Questionnaire. *See*

20

DICKINSON, TEX., CODE OF ORDINANCES, ch.18, art V, § 18-61(c)(2)(*e*). The ordinance also states that the City will monitor the vacation rental activity in part through the state occupancy tax reports to determine whether a specific use permit has been abandoned. *See id.* § 18-61(c)(2)(*b*).

Crystal Cruise does not challenge the validity of the legislature's determination that rentals of 30 days or less are different from longer-term rentals and thus are not treated as wholly residential in character. The City's reliance on the same 30-day criterion to regulate property use with an aim toward preserving the character of its residential areas is not arbitrary or irrational.

Crystal Cruise also challenged the specific use permit process on equal protection grounds. On this issue, the trial court faulted the City for failing to show that it had a rational basis for denying Crystal Cruise's application for a specific use permit while granting another property owner's application. But Crystal Cruise made no showing it was similarly situated to the successful applicant. *See Klumb*, 458 S.W.3d at13 (viable equal protection claim requires the plaintiff to show it was "treated differently from others similarly situated").

Before Crystal Cruise submitted its application for a specific use permit, it had a history of noncompliance with Dickinson's zoning laws. Crystal Cruise's property is also on a cul-de-sac and was advertised by Crystal Cruise as accommodating up to 30 guests. Nothing in the record shows that the successful

applicant shared any of these characteristics. Absent a showing that it was treated differently from another similarly situated person, there is no basis for concluding that Dickinson violated Crystal Cruise's right to equal protection. *See Draper*, 629 S.W.3d at 791–92. As a result, we hold that the trial court erred in granting Crystal Cruises' request for declaratory and injunctive relief on that claim.

## Ultra Vires Claim

The ultra vires exception to governmental immunity applies to suits against government officers for acting outside their authority. *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 161 (Tex. 2016); *see City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (suit must not complain of government officer's exercise of discretion, but must allege and prove that officer acted without legal authority or failed to perform a purely ministerial act).

Crystal Cruise failed to bear its burden to show that the vacation rental ordinance violates its constitutional rights to due course of law and equal protection, so there is no basis for concluding that Dickinson acted outside its authority in enacting it or that Mayor Skipworth acted ultra vires in enforcing it. The Zoning Enabling Act empowers municipalities to regulate "the location and use of buildings, other structures, and land for business, industrial, residential, or other purposes." TEX. LOC. GOV'T CODE § 211.003. Zoning regulations must be designed to:

(1) lessen congestion in the streets;

(2) secure safety from fire, panic, and other dangers;

(3) promote health and the general welfare;

(4) provide adequate light and air;

(5) prevent the overcrowding of land;

(6) avoid undue concentration of population; or

(7) facilitate the adequate provision of transportation, water, sewers, schools, parks, and other public requirements.

TEX. LOC. GOV'T CODE § 211.004.

The vacation rental ordinance states that it was enacted "in the best interest of the health, safety, and welfare" of Dickinson's residents. DICKINSON, TEX., ORDINANCE No. 840-2016 (preamble). The specific use permit application shows the City's reason for enacting the ordinance was to preserve the "residential feel and character" of its rural residential and conventional residential districts and to protect other property owners in those districts from "unnecessar[y] intru[sion]" by incompatible land use. DICKINSON, TEX., CODE OF ORDINANCES, ch.18, art V, § 18-61(c). Safeguarding the safety, welfare, and property of residential neighborhoods and "minimizing the adverse impacts resulting from increased transient rental uses" in such neighborhoods "are legitimate governmental interests." *Draper*, 629 S.W.3d at 786. Unlike ordinances found invalid in the cases relied on

by Crystal Cruise,[6] Dickinson's vacation rental ordinance does not apply retroactively, nor is it an outright ban on short-term rentals.

Because Crystal Cruise failed to carry its burden of establishing that the zoning ordinance was an invalid exercise of police power without any rational basis, the Mayor's enforcement of the ordinance was not ultra vires.

### Dickinson's Counterclaim

In its seventh issue, the City challenges the trial court's denial of its counterclaim against Crystal Cruise, Yat, and Griffin, seeking a permanent injunction and civil penalties under Texas Local Government Code Chapter 211 for their operation of the property as a vacation rental without a specific use permit in violation of city ordinance. Section 211.012 provides that if property is used in violation of a zoning regulation, a municipal authority may, among other things: (1) prevent the unlawful use; (2) restrain, correct, or abate the violation; (3) prevent the occupancy of the land, building, or structure; or (4) prevent any illegal act, conduct, business, or use on or about the premises. TEX. LOC. GOV'T CODE § 211.012(c). Proof of an ordinance's violation is enough to qualify for injunctive

---

[6]     *See Muns*, 651 S.W.3d at 336, 345; *Zaatari v. City of Austin*, 615 S.W.3d 172, 188–89 (Tex. App.—Austin, 2019, pet. denied); *see also City of Dallas v. Dallas Short-Term Rental Alliance*, No, 05-23-01309-CV, 2025 WL 2022063, at *1 (Tex. App.—Dallas July 18, 2025, pet. filed) (holding that appellees showed probable right to relief to support temporarily enjoining enforcement of ordinance banning short-term rentals in areas zoned for single-family residential use).

relief under Chapter 211. *Hollingsworth v. City of Dallas*, 931 S.W.2d 699, 703 (Tex. App.—Dallas 1996, writ denied). The municipal authority may also impose civil penalties for a violation of its ordinances. *See* TEX. LOC. GOV'T CODE § 211.012(c).

The trial court's error in concluding that the vacation rental ordinance was invalid necessarily resulted in the denial of the City's counterclaim. The trial court made no findings of fact or conclusions of law that addressed the City's counterclaim on the merits. We therefore reverse the trial court's denial of the counterclaim and remand the counterclaim for further proceedings consistent with this opinion.

## Conclusion

We reverse the trial court's judgment, render judgment denying the appellees' due course of law, equal protection, and ultra vires claims, and remand the City's counterclaim for further proceedings consistent with this opinion.

Clint Morgan
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.